IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG ROBERT MYERS, | ) | CASE NO. 3:16-CV-00659 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SOLOMON OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JAMES HAVILAND, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | **(Doc. Nos. 1, 25, 30, 37) and ORDER (Doc.** |
| | | **Nos. 31, 32, 33, 34, 42, 43, 44, 45.)** |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is

the Petition of Craig Robert Myers ("Myers" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254.  Myers is in the custody of the Ohio Department of Rehabilitation

and Correction pursuant to journal entry of sentence in the case of *State v. Myers*, Wood County

Court of Common Pleas Case No. 2011-CR-0364.

Also pending before the Court are the following motions filed by Myers: (1) Motion for

Evidentiary Hearing (Doc. No. 31); (2) Motion for *In Camera* Examination of Medical

Documents (Doc. No. 32); (3) Motion to Supplement the Record (Doc. No. 33); (4) Motion for

Leave to Address Recently Obtained Information (Doc. No. 34); (5) Motion for Leave to Expand

the Record with subpoenaed cell phone records (Doc. No. 42); (6) Motion for Leave to Expand

the Record with request for written finding (Doc. No. 43); (7) Motion for Leave to Expand the

Record with "any and all Defendant Exhibits A through K that were filed to the record on

February 13, 2012;" (Doc. No. 44); and (8) Motion for Leave to Further Address October 11,

2012 Bond Revocation (Doc. No. 45).

For the following reasons, the Motions listed above  (Doc. Nos. 31, 32, 33, 34, 42, 43, 44,

45) are DENIED; and the undersigned recommends the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Myers's conviction as follows:

> {¶ 2} On the evening of July 15, 2011, J.S., of Marion, Ohio, drove to Craig
> Myers' home in West Millgrove, Ohio, for dinner.  The two had been in an
> on-and-off-again relationship for approximately a year-and-one-half.  The
> relationship was strained, and the couple had discussed attending counseling
> together but had taken no action.
>
> {¶ 3} After dinner that evening, Myers and J.S. began discussing their
> relationship.  According to J. S., she told Myers that their relationship was over
> and that counseling would not alter her decision.  Myers began yelling and
> became verbally abusive. J.S. attempted to leave, but Myers took her car keys and
> blocked the house exits.  She yelled for help and begged Myers for several hours
> to let her go.  During the altercation, J.S. claims that Myers held her by the throat
> and threw her against the wall and to the floor multiple times.  When she tried to
> escape, he closed the back door on her leg and hand. J.S. testified that their
> physical and verbal altercation spanned several hours.
>
> {¶ 4} According to J.S., after hours of verbally and physically struggling with
> Myers, she consciously changed her approach.  Rather than aggressively trying to
> leave, she became passive.  She allowed Myers to escort her to his bedroom
> whereupon he undressed her and had sex with her.  Afterwards, J.S. testified that

2

Myers calmed down and fell asleep.

{¶ 5} At approximately 2:00 a.m. on the morning of July 16, 2011, J.S. woke Myers and requested her keys.  He voluntarily returned them, and she left. J.S. drove home, showered, and then went to Marion General Hospital's emergency department.  She complained of a headache, as well as pain in her right shoulder, neck, chest, and right arm.  Upon examination, she was found to have multiple bruises, contusions, and abrasions on her arms, legs, and chest.  She reported the incident to the Wood County sheriff's office that same morning.

{¶ 6} The state charged Myers with felonious assault, under R.C. 2903.11(A)(1), and abduction, under R.C. 2905.02(A)(2).  The case went to a jury trial on May 8, 2013.  At trial, several witnesses were called, including Katherine Mull, a licensed social worker from the Cocoon Shelter, a domestic violence victims' advocacy organization.  Over the objection of the defense, the court permitted Mull to provide testimony describing battered-woman syndrome (BWS), the cycle of violence, and how it affects the behavior of an abused woman.  The jury ultimately convicted Myers.

*State v. Myers*, 2014 WL 4269104 at * 1 (Ohio App. 6th Dist. August 29, 2014).

## II. Procedural History

### A.    Trial Court Proceedings

In August 2011, a Wood County Grand Jury charged Myers with one count of abduction in violation of Ohio Rev. Code § 2905.02(A)(2), in Case No. 2011CR00364.  (Doc. No. 25-1, Exh. 1.)  Several months later, in November 2011, Myers was charged with one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1), in Case No. 2011CR0615. (Doc. No. 25-1, Exh. 2.)  On November 18, 2011, the State moved to combine the two cases on the grounds they "arise out of a continuing course of conduct."[1]  (Doc. No. 25-1, Exh. 3.)  The trial court granted the motion, and combined the two cases into Case No. 2011CR0364.  (Doc.

---

[1] It appears the November 2011 indictment arose from continuing injuries suffered by the victim, Julie Smith (referred to in the state appellate court opinion as "J.S."), resulting from the July 2011 incident with Myers.

3

No. 25-1, Exh. 4.)  Myers pled not guilty.

The docket reflects that, on February 13, 2012, Myers' appointed defense counsel, Leann Schemrich, filed a "Motion requesting an order for disclosure of medical providers and records and request the Court to conduct an *in camera* examination of medical documents with memorandum in support and certification with defendant's exhibits A-K."  *See* Docket for *State v. Myers*, Wood County Court of Common Pleas Case No. 2011CR0364.  It appears Myers' request related to the medical providers and records of the victim, Julie Smith.[2]  It also appears that Myers' motion attached copies of certain of Ms. Smith's medical records as "Exhibits A, B, and C."

On March 5, 2012, the State filed a response, in which it requested that "the medical records of Ms. Smith included in Defendant's motion" be sealed pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").  (Doc. No. 34-1.)  In addition, the State opposed Myers' request that Ms. Smith be required to disclose either the identities of her medical providers or her medical records, arguing "the collection of medical records and related information is time consuming and the State is actively working through the discovery process.  Therefore there is no need at this time for an order compelling the victim to disclose the names and addresses of her medical providers and no need to compel production of medical records or other evidence at this time."  (*Id.*)

---

[2] As discussed *infra*, Myers argues Ms. Smith's medical records are highly relevant because she was allegedly in three separate car accidents prior to the July 5, 2011 incident which is the subject of Myers' criminal case.  These car accidents allegedly occurred in August 2007, June 2009, and November 2010. Myers asserts these records show that Ms. Smith's right shoulder injury was the result of some or all of these accidents and was not caused by Myers.

4

On March 23, 2012, the trial court issued an Order that "the clerk of court shall seal exhibits A, B, and C that are attached to defendant's motion requesting an order for disclosure of medical providers and records and request court to conduct an *in camera* examination of medical documents." *See* Docket for *State v. Myers*, Wood County Court of Common Pleas Case No. 2011CR0364. The docket does not reflect any further pleadings or orders relating to Myers' motion.[3]

Jury trial commenced on May 8, 2013. (Doc. No. 25-1, Exh. 5.) On May 10, 2013, the jury found Myers guilty as charged. (*Id.*) After trial, but before sentencing, Myers filed a renewed motion for judgment of acquittal on both charges, as well as a motion for a new trial. (Doc. No. 25-1, Exhs. 6, 7.) On June 20, 2013, the trial court denied both motions. (Doc. No. 25-1, Exh. 9.)

The trial court conducted a sentencing hearing on July 8, 2013, at which time Myers was sentenced to a three (3) year term of incarceration for abduction and an eight (8) year term of incarceration for felonious assault. (Doc. No. 25-1, Exh. 10.) The trial court determined that the sentences should be served concurrently, for a total aggregate sentence of eight (8) years incarceration. (*Id.*)

**B.      Direct Appeal**

---

[3] The docket indicates that, at some in point in March or April 2012, Myers' defense counsel Ms. Schemrich was replaced by appointed counsel William Stephenson. In September 2012, Myers moved to discharge his attorney. *See* Docket. On September 19, 2012, the trial court removed William Stephenson as Myers' counsel and appointed attorney Christopher Zogafrides. *Id.* On November 26, 2012, Mr. Zogafrides moved to withdraw as counsel. *Id.* The trial court subsequently removed Mr. Zogafrides as counsel and appointed William Hayes. *Id.* In March 2013, Mr. Hayes moved to withdraw as counsel. *Id.* The trial court granted the motion and appointed David Klucas. *Id.* Mr. Klucas represented Mr. Myers during trial. *Id.*

On July 11, 2013, Myers, through counsel,[4] filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 25-1, Exh. 11.)  In his appellate brief, Myers raised the following two assignments of error:

> I.     The trial court committed reversible error by admitting into evidence the testimony of Katherine Mull.
>
> II.    The verdict was against the manifest weight of the evidence.

(Doc. No. 25-1, Exh. 12.)  The State filed a brief in response.  (Doc. No. 25-1, Exh. 13.)

On August 29, 2014, the state appellate court (1) agreed that Ms. Mull's testimony should have been excluded but found the admission to be harmless error; and (2) found Myers' manifest weight of the evidence argument to be without merit.  The state appellate court, therefore, affirmed Myers's convictions and prison sentences.  *State v. Myers*, 2014 WL 4269104 (Ohio App. 6th Dist. Aug. 29, 2014.)  *See also* Doc. No. 25-1, Exh. 14.   Myers did not appeal to the Supreme Court of Ohio.

## C.     First Post-Conviction Petition

Meanwhile, on December 5, 2013, Myers filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  (Doc. No. 25-1, Exh. 21.)  He raised the following nine[5] claims in his Petition:

> I.     Defendant had ineffective counsel a violation of his 6th Amendment.
>
>        Supporting facts: Trial counsel failed to fully cross exam witnesses and provide the court evidence for jury to hear causing prejudice.

---

[4] The record reflects that Mr. Klucas, who represented Myers at trial, also represented him on direct appeal to the state appellate court.

[5] Myers labeled two of his claims as "Claim Number 1."  The Court will refer to the claims in the order they appear in the petition, rather than by the number used to label them.

6

II.     Trial counsel failed to call medical expert to testifie [sic] on Defendants behalf.

Supporting facts: On several meeting with counsel prior to the May 2013 trial date, I was told that the Medical Expert (Dr. Anthony Frogameni, M.D.) (see docket date 4/30/2013) had made several comments to counsel that the medical was for to my favor and on my behalf.  Yet counsel made a poor decision by not calling the Dr.  to testifie [sic] on my behalf.

III.    Counsel failed to call Private Investigator to testifie [sic] on Defendants behalf.

Supporting facts: Private Investigator interviewed the alleged victim prior to trial.  Investigator reported that the alleged victim stated that she was chasing the defendant through his own house and had tripped over the dog land on an outstretched arm and that the injury wasn't as bad as she had thought.

IV.     Counsel failed to show the time line factors in the underlined case.

Supporting facts: When counsel cross examined the alleged victim Julie Smith, Ms. Smith stated under oath that she had talked to the Defendant on the cell phone the night of the alleged incident right up until she pulled in her driveway. . . . . The cell records were subpoenaed way prior to the trial and they reflect that the last call was terminated roughly around 2:25 a.m.  Ms. Smith testified that it took an hour and a half to drive and that she left the defendants house at 2 am the time lines on Ms. Smith credibility was clearly a factor in this case.

V.      Trial Counsel failed to fully cross exam witness Deputy Lori Baker

Supporting facts: On cross exam of Deputy Lori Baker, counsel failed to question Deputy Lori Baker about the police report taken on July 16th 2011 when Ms. Smith arrived at the Wood Co. Sheriff's Office. * * *

VI.     Trial Counsel failed to [question] the alleged victim's work history after being told by Defendant Counsel failed to provide Defendant with discovery information.

Supporting facts: On several occasions while meeting with defense counsel, I asked if Ms. Smith the alleged victim had received any funds in any way for her alleged injury.  And I was never fully answered or shown any claims sheet prior to trial.  For I strongly expressed that I felt Ms. Smith was claiming the alleged incident of July 15th 2011 to gain moneys.

* * * Had I been informed of [Ms. Smith's work history and unemployment claim] by counsel prior to trial and had counsel fully investigated this as I requested then I could have been addressed in front of the jury a key factor in showing ones credibility and motive to make claims of this nature.  When Ms. Smith realized she had no funds coming in she targeted Mr. Myers, the Defendant.

VII.    Trial Counsel failed to fully cross examine the alleged victim Ms. Julie Smith.

Supporting facts: Trial counsel to fully cross exam State's witness and alleged victim Ms. Smith while trial was in progress. Ms. Smith stated under oath that she had returnt [sic] home to Marion Ohio after leaving the home of the defendant and had taken a bath. . . The witness stating she took a bath played a roll in the outcome of the trial.  When the States called the Registered Nurse to testifie [sic] the Nurse made comments at cross examination by defense counsel that Ms. Smith would not have the curled skin fragment at the end of her abrasions and that Ms. Smith never said anything about going home and taking a bath. * * * And with the conflicting time lines of cell call and driveway arrival times and arrival time at the ER, it is clear that Ms. Smith's credibility should have been attacked more thorough. * * *

VIII.   Trial Counsel along with the courts failed to instruct the jury the difference between serious physical harm and just plain physical harm as underlined in section 2901.01 as defined the State failed to prove serious physical harm.  Had the jury been informed of the difference of the two, then a conviction of felonious assault would have not been rendered.

IX.     Trial counsel failed to instruct the jury during voir dire that the newspaper media coverage that was printed that the defendant jumped bond and the competency motion was all untrue and did not protain [sic] in any way to the defendant.

(Doc. No. 25-1, Exh. 22.)  Thereafter, on January 23, 2014, Myers moved to add the following

additional claims to his Petition:

X.      Trial counsel failed to produce photographic evidence that was in discovery packet prior to being appointed to the case in chief.

Supporting facts: Previous [defense counsel] Leann Schemrich along with Investigator Ms. Crumm both from the Wood County Public Defender's Office went to the Defendants' home in the month of October 2011.  The

both of them were at the residen[ce] for about 2 hours walking through the testimony of Julie Smith. . . . After trial, I asked defense attorney Klucas why he hadn't showed the jury the photos of my home that Attorney Schemrich had taken. Attorney Klucas comment was that the photos were not in the discovery packet.  [Later, Mr. Klucas] explained that he had found them and that his office assistant had lost them. . . . Had the defense attorney had the photos at trial, the jury would of had a better understanding of the defendants home.  And would of seen Attorney Schemrich at the defendants back door showing the jury that it would be impossible to have ones leg shut into that door as Ms. Smith had stated.  Which lead to an abduction conviction. * * *

XI.  Trial counsel failed to produce evidence that was provided to him prior to trial. For the case in chief.

Supporting facts: Defense counsel failed to produce evidence that was provided to him prior to the trial [demonstrating that Ms. Smith had contact with Myers when she claimed otherwise at trial.]

(Doc. No. 25-1, Exh. 22.)

On January 30, 2014, the trial court denied Myers' post-conviction petition.  (Doc. No. 25-1, Exh. 23.)  With regard to Myers' ineffective assistance of trial counsel claims, the trial court found them to be without merit because Myers failed to attach any evidence to his petition that would support his claims.  The trial court further found that "every claim he makes against Mr. Klucas falls under the umbrella of trial tactics, and none of Mr.Klucas' decisions regarding questions on cross examination and which witnesses to present to the jury was objectively unreasonable."  (*Id*. at Page ID# 399.)  The trial court then rejected Myers' jury instruction claims, finding "on the whole, the instructions read to Mr. Myers's jury sufficiently explained the difference between serious physical harm and physical harm."  (*Id*. at Page ID#400.)  The trial court also concluded that "the court's failure to instruct jurors about the newspaper articles did not violate Mr. Myers's rights."  (*Id.* at PageID#401.)

Finally, the trial court held as follows: "If Mr. Myers is attempting to make an argument

9

about the sufficiency of the evidence used to convict him of felonious assault, the court finds that there was sufficient evidence before the jury that the victim suffered some temporary, substantial incapacity or any degree of prolonged or intractable pain due to her shoulder injury and subsequent surgery."  (*Id*. at Page ID#400.)

It does not appear Myers appealed this ruling to the state appellate court.

**D.     First Application to Reopen Appeal under Ohio App. R. 26(B)**

On October 3, 2014, Myers, through new counsel Kenneth Rexford, filed an Application to Reopen Appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 25-1, Exh. 15.)  Myers alleged his appellate counsel was ineffective due to counsel's failure to assert the following issues on direct appeal:

I.      The trial court erred by incorrectly instructing the jury as to the lesser-included offense of assault and as to the charged offense of felonious assault.

II.     Mr. Myers was deprived of his right to the effective assistance of counsel because counsel allowed incorrect instruction as to the lesser-included offense of assault and as to the charged offense of felonious assault and because counsel did not properly pursue the alternative conviction for the lesser offense.

III.    The prosecution engaged in prosecutorial misconduct by improperly arguing against the lesser included offense of assault by incorrectly stating the difference between the charged offense and the lesser offense.

IV.     The conviction was against the manifest weight of the evidence because the evidence only supported a conviction for the lesser offense of assault.

(Doc. No. 25-1, Exh. 15.)  On November 12, 2014, the state appellate court denied Myers' application on the merits.  (Doc. No. 25-1, Exh. 16.)

On December 17, 2014, Myers, through counsel, filed a Notice of Appeal to the Supreme

10

Court of Ohio.  (Doc. No. 25-1, Exh. 17.)  In his Memorandum in Support of Jurisdiction, Myers

raised the following Propositions of Law:

> I.    In analyzing *Strickland* in the context of a motion to reopen an appeal, the
>       appellate court must analyze the assertions of Petitioner in the context of
>       competent counsel, not deferring to the strategy decisions and defense
>       arguments made by the allegedly deficient attorney; in this case, both trial
>       and appellate counsel were ineffective because counsel allowed incorrect
>       instruction as to the lesser-included offense of assault and as to the
>       charged offense of felonious assault and because counsel did not properly
>       pursue the alternative conviction for the lesser offense.
>
> II.   The Sixth District unfairly determined that the trial court did not err or
>       erred non-prejudicially by incorrectly instructing the jury as to the lesser-
>       included offense of assault and as to the charged offense of felonious
>       assault.
>
> III.  The Sixth District unfairly determined that, whether the prosecution did or
>       did not engage in prosecutorial misconduct by improperly arguing against
>       the lesser included offense of assault by incorrectly stating the difference
>       between the charged offense and the lesser offense, no harm was done.
>
> IV.   The Sixth District unfairly determined that Mr. Myers could not prevail on
>       a manifest weight challenge.

(Doc. No. 25-1, Exh. 18.)  The State filed a Memorandum in Opposition on January 5, 2015.

(Doc. No. 25-1, Exh. 19.)

On February 18, 2015, the Supreme Court of Ohio declined to accept jurisdiction of

Myers's appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 25-1, Exh. 20.)

**E.    Motion for Leave to File Motion for New Trial and Second Post-Conviction Petition**

On December 22, 2014, Myers filed a *pro se* "Motion for Leave to File a Motion for New

Trial for Erroneous Jury Instructions that caused an unfair trial, prosecution misconduct,

cumulative error."  (Doc. No. 25-1, Exh. 24.)  In addition to asserting improper jury instructions

and prosecutorial misconduct, Myers argued that "the verdict is not sustained by sufficient

11

evidence and is contrary to law." (*Id.* at Page ID#404.)  Myers argued "the charge of felonious

assault stemmed from Ms. Smith having a Slap Tear injury and needing mild surgery" on her

right shoulder.  (*Id.* at Page ID#412-413.)  He stated "the reasonable doubt factor comes into

play" because Dr. Fritz "can not even put a date on the injury" and "was provided only part of

Ms. Smith's medical record." (*Id.*)  Myers references "the discovery including Ms. Smith's car

accident with air bag deployment just eight months prior." (*Id.*)

Shortly thereafter, on January 16, 2015, Myers filed his second, *pro se* Petition to Vacate

or Set Aside Judgment of Conviction or Sentence.  (Doc. No. 25-2, Exh. 25.)  This Petition

raised the following three claims for relief:

I. Trial Court erred when instructing the jury as to the lesser included
offenses.

Supporting facts: Trial court misstated the law by following the pattern
jury instructions on the lesser included offense of unlawful restraint.  Trial
court also erred when giving the instructions on the lesser included
offense of assault by failing to read the instructions of subsection (B) of
assault.

II. State prosecutor Aaron T. Lindsay engaged in numerous acts of
prosecution misconduct during trial.

Supporting facts: Prosecution agreed to the instructions of the two lesser
included offenses to be read to the jury.  But improperly argued against
the lesser included offenses of unlawful restraint and assault by incorrectly
stating the charged offense and the lesser offense.  Prosecution
opinionated belief to bolster states witness causing the jury to decide case
based upon the credibility and status of the prosecutor.

III. Defendant was appointed ineffective trial counsel.

Supporting facts: Defense counsel failed to object to the erroneous jury
instructions, prosecution misconduct, and addressing the *mens rea* of
felonious assault.

(Doc. No. 25-2, Exh. 25.)

12

On January 27, 2015, the trial court denied Myers' Motion for Leave to file a Motion for New Trial as untimely.  (Doc. No. 25-2, Exh. 26.)  On that same date, the trial court denied Myers' second Petition for Post-Conviction Petition on the grounds Myers had not demonstrated he was unavoidably prevented from discovering the facts underlying his claims.  (Doc. No. 25-2, Exh. 27.)

It does not appear Myers appealed either of these rulings to the state appellate court.

**G.      Second Application to Reopen Appeal under Ohio App. R. 26(B)**

On October 19, 2015, Myers, proceeding *pro se*, filed a second Application to Reopen Pursuant to Ohio App. R. 26(B).  (Doc. No. 25-2, Exh. 28.)  Myers alleged his appellate counsel was ineffective due to counsel's failure to assert the following issues on direct appeal:

I.      The trial court erred by incorrectly instructing the jury as to the lesser-included offense of unlawful restraint and as to the charged offense of abduction, creating a conflict of authority between the trial courts as well as the appellant courts.

II.      Appellant, Craig Myers, was deprived of his right to the effective assistance of counsel because counsel allowed incorrect instructions as to the lesser-included offense of unlawful restraint and as to the charged offense of abduction and because counsel did not properly pursue the alternative conviction for the lesser offense.

III.      The prosecution engaged in prosecutorial misconduct by improperly arguing against the lesser included offense of unlawful restraint by incorrectly stating the difference between the charged offense and the lesser offense.

IV.      Appellant counsel knowingly labored under a conflict of interest during the appeal process.  Trial counsel and appellant counsel were one in the same person.

V.      At sentencing conducted on July 10, 2013 Defendant was sentenced to both charged offenses of abduction and felonious assault.  Trial court erred by not honoring the allied offenses of the charged offenses.

13

VI.     Trial court failed to consider key factors in the felony sentencing process under R.C. 2929.12, R.C. 2929.13, R.C. 2929.14, R.C. 2953.08.

(Doc. No. 25-2, Exh. 28.)  On October 28, 2015, the state appellate court denied Myers' second 26(B) Application as untimely and barred by *res judicata*.  (Doc. No. 25-2, Exh. 29.)

On December 11, 2015, Myers filed a *pro se* Notice of Appeal to the Supreme Court of Ohio.  (Doc. No. 25-2, Exh. 30.)  In his Memorandum in Support of Jurisdiction, Myers raised the following Propositions of Law:

I.      Sixth District Court of Appeals failed to review the certified conflict that has been discovered.  The jury instructions for abduction and the lesser included offense of unlawful restraint are incomplete and are prejudice to any defendant.  The failure to introduce the guidelines set forth by the Appellate Court creates a violation of due process.  The incomplete jury instructions for the lesser included offense of unlawful restraint makes any jury believe that if the victim is harmed then the defendant is guilty of abduction.  Which is wildly incorrect.

II.     Sixth District Court of Appeals failed to review that the defendant Sixth Amendment was violated when the trial counsel was ineffective.  Because counsel allowed incorrect instructions as to the lesser included offense of unlawful restraint.

III.    Sixth District Court of Appeals failed to review the prosecutorial misconduct that mislead the jury and created an unfair trial.  Prosecution choose to use the incomplete Ohio jury instructions to his advantage and inflamed the jurors minds that if someone is being beating up then that's abduction.

IV.     Sixth District Court of Appeals failed to review the defendants Sixth Amendment rights were violated when appointed trial counsel choose to represent the defendant on the direct appeal with a known conflict of interest.

V.      Sixth District Court of Appeals failed to review that the defendant was sentenced to both charged offense when it was proven that both charged offenses resulted from the same action.  The trial court failed to honor the allied offense statute R.C. 2941.25(A).

VI.     Sixth District Court of Appeals failed to review that the trial court failed

14

> to consider key factors in the felony sentencing process under R.C.
> 2929.12, R.C. 2929.13, R.C. 2929.14, and R.C. 2953.08.

(Doc. No. 25-2, Exh. 31.)

On February 24, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 25-2, Exh. 32.)

## H.   Other Post-Conviction Filings

In September 2015, Myers, proceeding *pro se*, filed motions in the state trial court to obtain records, for complete discovery, for release of all personal property from former defense counsel, and to dismiss court costs.  *See* Docket for *State v. Myers*, Wood County Court of Common Pleas Case No. 2011CR364.  The trial court denied the motions on January 7, 2016. *Id*.  Myers appealed to the state appellate court, which denied the appeal on September 30, 2016. *See* Docket for *State v. Myers*, Sixth District Court of Appeals of Ohio Case No. WD-16-007. Myers then appealed to the Supreme Court of Ohio, which declined jurisdiction on March 15, 2017.  *See* Docket for *State v. Myers*, Supreme Court of Ohio Case No. 2016-1598.  Myers subsequently filed a Motion for Reconsideration and Motion to Correct Clerical Error, which remains pending as of the date of this decision.  *Id*.

In November 2015, Myers filed in the state appellate court a (1) Motion to Certify Conflict under App. R. 25(A) regarding the trial court's jury instructions as to unlawful restraint; and (2) a writ of procedendo.  *See* Docket for *State v. Myers*, Sixth District Court of Appeals Case No. 2013WD0048.  The state appellate court denied the motion and writ on January 7, 2016.  *Id*.  Myers appealed to the Supreme Court of Ohio.  *See* Docket for *State v. Myers*, Supreme Court of Ohio Case No. 2016-0229.  The Supreme Court declined jurisdiction on April 20, 2016.  *Id.*

## I.      Federal Habeas Petition

On March 8, 2016,[6] Myers filed a Petition for Writ of Habeas Corpus and asserted the

following four grounds for relief:

I.      Ineffective Assistance of Counsel guaranteed by the Sixth
Amendment to the United States Constitution, Petitioner suffered
from concurrent representation when trial counsel represented the
Petitioner on direct appeal.

Supporting facts: Trial counsel allowed incorrect instructions as to
the lesser-included offenses of assault R.C. 2903.11 and unlawful
restraint R.C. 2905.03 and as to the charged offense of felonious
assault R.C. 2903.11 and abduction R.C. 2905.02 and because
counsel did not properly pursue the alternative conviction for the
lesser-included offenses.

II.      Trial Court erred by incorrectly instructing the jury as to the
lesser-included offenses of assault R.C. 2903.13 and unlawful
restraint R.C. 2905.03 and as to the charged offense of felonious
assault R.C. 2903. and abduction R.C. 2905.02 Violating the
petitioner's right to due process.

Supporting facts: Trial Court failed to instruct the jury as to
subsection (B) of assault.  Trial Court failed to read subsection (B)
entirely.  And then instructed the jury that the *mens rea* of
knowingly attaches to the nature of the harm and injury as serious.
Trial Court erred in the instruction of unlawful restraint by failing
to inform the jury of the guidelines for the proper conviction of the
lesser-included offense of unlawful restraint the guidelines were
established by the Eighth District Court of Appeals Cuyahoga
County in 1991 due to the unlawful restraint statute, was without
any guideline as to a proper conviction of the charge.  Trial Courts
instructions left the jury to believe that if the alleged victim was
assaulted in any way then the petitioner is guilty of abduction.

---

[6]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner
delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the
Petition herein did not arrive at the Court for filing until March 17, 2016, Myers states that
he placed it in the prison mailing system on March 8, 2016.  (Doc. No. 1 at 15.)  Thus,
the Court will consider the Petition as filed on March 8, 2016.

III.    Prosecutorial misconduct in violation of Petitioner's right to a fair trial and violation of the due process clause.

Supporting facts: Prosecution improperly argued against the lesser included offense of assault R.C. 2903.11 by incorrectly stating the difference between the charged offense and the lesser offense. Prosecution improperly argued against the lesser included offense of unlawful restraint by telling the jury that assault and unlawful restraint go hand-in-hand, and if the alleged victim was being assaulted that is abduction.

IV.    Due Process Violation.

Supporting facts:  The conviction was against the manifested [sic] weight of the evidence because the evidence only supports a conviction for the lesser offenses of assault R.C. 2903.11 and unlawful restraint R.C. 2905.03 A violation of Petitioner's right to a fair trial and violation of the due process clause.

(Doc. No. 1.)  Respondent filed his Return of Writ on August 3, 2016.  (Doc. No. 25.)

Shortly thereafter, on August 15, 2016, Myers filed a "Motion for Leave to Supplement"

his Petition, seeking leave to add the following two additional grounds:

V.    Sixth District Court of Appeals for Wood County, Ohio violated the Petitioner's Fourteenth Amendment Right to Due Process when it failed to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury lost its way and created the manifest injustice of convicting Craig R. Myers, of Felonious Assault R.C. 2903.11(A)(1) and Abduction R.C. 2905.02(A)(2).

VI.    The State Trial Court violated the Petitioner's Fourteenth Amendment Right to Due Process when it failed to provide sufficient evidence of every element to support a conviction of Felonious Assault R.C. 2903.11(A)(1) and Abduction R.C. 2905.02(A)(2).

(Doc. No. 26 at 1.)  Respondent did not oppose Myers' "Motion for Leave to Supplement."

On September 12, 2016, the Court denied Myers' request to raise his proposed Fifth

Ground for Relief, but granted his request to raise his proposed Sixth Ground for Relief

regarding Sufficiency of the Evidence.  (Doc. No. 29.)  The Court then ordered Myers to address in his Traverse each of the four grounds raised in his original Petition, as well as Ground Six as set forth in his Motion for Leave to Supplement.  (*Id.*)  Respondent was ordered to file a response within 30 days of the filing of the Traverse.  (*Id.*)

Myers timely filed his Traverse on September 30, 2016.  (Doc. No. 30.)  On that same date, Myers also filed a Motion for Evidentiary Hearing on the Claim of Actual Innocence. (Doc. No. 31.)  Subsequently, on January 23, 2017, Myers filed a (1) Motion for *In Camera* Examination of Medical Documents (Doc. No. 32); and (2) Motion to Supplement the Record (Doc. No. 33.)  On February 16, 2017, Myers filed a Motion for Leave to Address Recently Obtained Information.  (Doc. No. 34.)

Although expressly ordered to file a Reply to the Traverse, Respondent failed to do so. Nor did he file responses to Myers' Motions for Evidentiary Hearing, *In Camera* Examination of Medical Documents, or Supplementation of the Record.  (Doc. Nos. 31, 32, 33.)  On February 17, 2017, the Court ordered Respondent to submit a reply to the Traverse and to respond to each of Myers' pending motions.  (Doc. No. 35.)

On March 3, 2017, Respondent complied with the Court's Order and filed his Reply to the Traverse (Doc. No. 37) and Opposition to Myers' pending motions.  (Doc. No. 36.)  Myers filed responses on April 3, 2017.  (Doc. Nos. 40, 41.)

On that same date, Myers filed the following four motions: (1) Motion for Leave to Expand the Record with subpoenaed cell phone records (Doc. No. 42); (2) Motion for Leave to Expand the Record with request for written finding (Doc. No. 43); (3) Motion for Leave to Expand the Record with "any and all Defendant Exhibits A through K that were filed to the

18

record on February 13, 2012;" (Doc. No. 44); and (4) Motion for Leave to Further Address

October 11, 2012 Bond Revocation (Doc. No. 45.)

### III.  Motions

**A.     Motions relating to Ms. Smith's Medical Records (Doc. Nos. 31, 32, 34, 44)**

Myers has filed numerous motions asking this Court to review certain medical records of

victim Julie Smith, none of which were admitted as exhibits or otherwise presented to the jury at

trial.  (Doc. Nos. 31, 32, 34, 44.)  The underlying theme of Myers' motions is that Ms. Smith's

medical records prove she sustained injuries to her right shoulder as a result of several car

accidents that occurred prior to the July 2011 incident with Myers.  Myers argues these records

establish Ms. Smith's right shoulder injury was a pre-existing injury and, therefore, should not

have formed the basis of his felonious assault conviction.

In his "Motion for *In Camera* Examination of Medical Documents" (Doc. No. 32), Myers

asks the Court to "conduct an *in camera* review of the medical documents that were filed to the

record, and listed as defendant's Exhibits A-K with Exhibits A, B, and C sealed in the evidence

room within the Wood County Common Pleas Court case of *State v. Myers*, 2011CR364."  (Doc.

No. 32 at 1.)  He argues as follows:

> On February 13, 2012, former defense attorney Leann Schemrich filed
> defendant's exhibits A-K to the record. . . . The trial court was requested by
> attorney Schemrich to conduct an *in camera* examination of the medical records
> listed as exhibits A, B, and C.  The seal[ed] medical records establish that the
> alleged victim (Julie A. Smith) had complained of neck and shoulder injury prior
> to the July 15, 2011 incident date.  The trial court failed to conduct the
> examination of the records, as the filed exhibits A-K were never addressed by
> neither the trial court, State prosecutor, or Defense Counsel at the May 2013 trial
> by jury.

(*Id*.)

19

In his "Motion Requesting Leave to Expand the Record Pursuant to Fed. R. Civ. P. 7" (Doc. No. 44), Myers asks the Court to expand the habeas record "to include Defendant's Exhibits A, B, and C, that are sealed and placed in the evidence room of the Wood County Common Pleas Court pursuant to the February 13, 2012 and March 5, 2012 filed motions by both Appointed Defense Counsel Leann Schemrich and Assistant State Prosecutor Aaron Lindsey."[7] (Doc. No. 44 at 1.)  Myers argues these records will establish that Ms. Smith's physical therapist and treating physician/surgeon (both of whom testified at trial) "failed to review the past medical history of the alleged victim prior to trial." (*Id*. at 2.)  He also argues these records demonstrate (1) he is actually innocent "as to the State's serious physical harm claim;" (2) trial and appellate counsel were ineffective for failing to raise the issue of "preexisting injury at both trial and direct appeal;" and (3) the trial court erred in sealing Ms. Smith's records and failing to conduct the requested *in camera* review.  (*Id*. at 6-9.)

_____

[7] Myers asserts sealed Exhibits A, B, and C "correspond with Exhibits D, E, F, and G that the Petitioner has already provided to this Honorable Court within the filing of the Traverse and Request for Evidentiary Hearing filed on September 30, 2016."  (Doc. No. 44 at 1.)  Exhibits D and E to Myers' Request for Evidentiary Hearing consist of traffic reports relating to previous car accidents involving Ms. Smith in November 2010 and June 2009, respectively.  (Doc. No. 31-1 at Page ID#s 842-856.)  Exhibit F appears to be an invoice directed to Ms. Smith for ambulance transport on June 8, 2009, the date of one of Ms. Smith's previous car accidents.  (*Id*. at Page ID# 857.)  Finally, Exhibit G consists of correspondence from " Medical Reimbursements of America, LLC" to Ms. Smith relating to medical expenses incurred by Ms. Smith in June 2009 and indicating "Marion General Hospital has contracted us to gather accident information which is needed to properly file your insurance claims." (*Id*. at Page ID#858.)  Myers does not request that this Court expand the habeas record to include the Exhibits marked D, E, F, and G that are attached to his Motion for Evidentiary Hearing.  Even if he had, the Court finds expansion of the record to include these documents would not be appropriate.  While Myers claims these Exhibits were attached to his February 2012 motion requesting the trial court conduct an *in camera* review of Ms. Smith's medical records, there is nothing on the face of these documents to substantiate Myers' claim or otherwise authenticate these documents as being part of the state court record.

In his "Motion for Leave to Address Recently Obtained Information" (Doc. No. 34), Myers states he recently obtained a copy of the State's response to Myers' February 2012 motion requesting the state trial court order Ms. Smith to disclose her medical providers and conduct an *in camera* review of Smith's medical records.  In that response, the State opposes Myers' motion and argues Ms. Smith's medical records are protected under HIPAA.  (Doc. No. 34-1.)  In his "Motion for Leave," Myers asserts "the State Prosecutor is clearly using the HIPAA mandate to deprive the Petitioner of his constitutional right to due process and a fair trial and pretrial proceedings."  (Doc. No. 34 at 2.)  He asserts the state trial court's decision to seal Ms. Smith's medical records was legal error and accuses his defense counsel of being ineffective and "aid[ing] in the concealment" of these records.  (*Id.* at 4.)  In addition, Myers characterizes Ms. Smith's records as "*Brady* material" and accuses the State of prosecutorial misconduct.  (*Id.*)  Myers urges the Court to expand the habeas record to include Ms. Smith's records and conduct an evidentiary hearing regarding his actual innocence.[8]  (*Id.* at 6.)

Finally, in his "Request for Evidentiary Hearing on the Claim of Actual Innocence" (Doc. No. 31), Myers argues Ms. Smith's medical records (filed as Exhibits A, B, and C to his state court motion for *in camera* examination and subsequently sealed by the trial court) constitute "excluded exculpatory evidence" that establishes his actual innocence.  (Doc. No. 31 at 2.)  He argues these records "show a pattern from state's witness Ms. Smith of a consistent complaint of

---

[8] Myers attaches a copy of the State's "Response to Motion Requesting an Order for Disclosure of Medical Providers and Records and Request Court to Conduct an *In Camera* Examination of Medical Records," which is stamped as filed in Wood County Court of Common Pleas Case No. 2011CR364 on March 5, 2012.  (Doc. No. 34-1.)  Although Myers does not expressly ask this Court to do so, the Court will expand the habeas record to include the State's Response as it is time-stamped as having been filed in Myers' underlying state court criminal action and there is no reason to doubt its authenticity.

the shoulder injury prior to July 15, 2011" and establish that "Ms. Smith is in fact complaining of the same shoulder injury that Myers has been sentenced to prison for." (*Id*. at 4.) Myers argues his due process rights have been violated, accuses Ms. Smith of testifying falsely at trial, and argues the prosecution knowingly suborned Ms. Smith's perjured testimony. (*Id*. at 4-7.) Lastly, Myers complains bitterly about the fact that his trial counsel also represented him on direct appeal, suggesting this "concurrent representation" was "done for the simply purpose to continue to conceal" Ms. Smith's medical records. (*Id.* at 11.)

Respondent argues each of Myers' motions should be denied. (Doc. No. 36.) He maintains Ms. Smith's medical records do not establish Myers' actual innocence because "whether she had previously been in a car accident which resulted in shoulder pain is quite immaterial to the injuries that she received as a result of Myers' assault." (*Id*. at 5.) Respondent argues Myers has failed to demonstrate that either an evidentiary hearing or *in camera* review of Ms. Smith's medical records are warranted under the circumstances. (*Id*.)

For the following reasons, the Court finds Myers' motions are without merit and denied. Specifically, the Court finds Ms. Smith's medical records are not necessary or relevant to the specific habeas claims set forth in the Petition. As noted above, Grounds One, Two, and Three of Myers' Petition (Doc. No. 1) allege claims of ineffective assistance of trial counsel, trial court error, and prosecutorial misconduct, each on the basis of allegedly incorrect jury instructions. Specifically, Ground One alleges trial counsel was ineffective for allowing incorrect instructions as to the lesser included offenses of assault and unlawful restraint (Doc. No. 1 at 5); Ground Two alleges the trial court erred by incorrectly instructing the jury as to the lesser included offenses of assault and unlawful restraint (Doc. No. 1 at 7); and Ground Three alleges the prosecution

22

improperly argued against the lesser included offenses of assault and unlawful restraint (Doc.

No. 1 at 8.)  Myers has neither argued nor demonstrated that Ms. Smith's medical records bear

any relevance to these Grounds for Relief.

Myers does claim that Ms. Smith's medical records are relevant to Ground Four, which

alleges his conviction was against the manifest weight of the evidence.  (Doc. No. 1 at 10; Doc.

No. 41 at 12-16.)  However, as discussed *infra*, manifest weight of the evidence claims are not

cognizable on federal habeas review.[9]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th

Cir.2006); *accord Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014); *Hess

v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

This Court allowed Myers to amend his Petition to assert a sufficiency of the evidence

claim ("Ground Six"), however, which is cognizable on federal habeas review.  Myers asserts

Ms. Smith's medical records are relevant to this claim because they demonstrate he did not cause

the right shoulder injury that formed the basis of his felonious assault conviction.  This argument

is rejected.  The standard for determining if a conviction is supported by sufficient evidence is

"whether after reviewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[9]  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a
claim that a verdict was against the manifest weight of the evidence-as opposed to one based
upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and
review the entire record, weigh the evidence, and consider the credibility of witnesses to
determine whether 'the jury clearly lost its way and created such a manifest miscarriage of
justice that the conviction must be reversed and a new trial ordered.' " *Hess v. Eberlin*, 2006
WL 2090093 at *7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App.3d 172,175, 485
N.E.2d 717 (Ohio Ct. App.1983).  Because a federal district court does "not function as an
additional state appellate court, vested with the authority to conduct such an exhaustive
review," this Court cannot consider whether Myers' conviction was against the manifest
weight of the evidence.  *Id.*

*Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.; Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution."  *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) citing *Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

In applying *Jackson*, this Court must limit itself to evidence adduced during trial because a "sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence'" and *"*does not extend to non-record evidence, including newly discovered evidence."  *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)(citing *Jackson*, 443 U.S. at 318).  *See also Brown v. Konteh*, 567 F.3d 191, 204-205 (6th Cir. 2009) (stating where a petitioner challenges the sufficiency of the evidence, courts must determine whether "viewing *the trial testimony and exhibits* in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis added); *Group v. Robinson,* 158 F. Supp.3d 632, 665 (N.D. Ohio 2016) (habeas review of sufficiency of the evidence claims is "limited to the evidence adduced during trial"); *Payton v. Perry*, 2011 WL 3862406 at * 7 (E. D. Mich. July 22, 2011), *report and recommendation adopted by* 2011 WL 3862381 (Aug. 31, 2011)(same); *Eley v. Bagley*, 2006 WL 2990520 at * 22 (N.D. Ohio Oct. 18, 2006) (same).  Here, it is uncontested that Ms. Smith's medical records were

24

not admitted as exhibits at trial or otherwise presented to the jury.  Under the authority noted above, any evidence not presented to the jury is simply not part of the sufficiency of the evidence analysis on habeas review.  Thus, Myers' sufficiency of the evidence claim provides no basis for expansion of the record, *in camera* review, or an evidentiary hearing to consider Ms. Smith's medical records.

Myers raises a host of other claims in his motions relating to Ms. Smith's medical records: ineffective assistance of trial counsel based on counsel's failure to introduce Ms. Smith's medical records; trial court error in failing to conduct *in camera* examination of those records; a due process claim; prosecutorial misconduct based on knowingly presenting perjured testimony; a *Brady* claim; and trial court error in sealing Ms. Smith's medical records on the basis that HIPPAA does not apply.  However, none of these claims are raised in Myers' habeas petition.  Therefore, they are not before this Court and will not be considered in this action.[10]

Lastly, Myers argues an evidentiary hearing is required because Ms. Smith's medical records demonstrate he is actually innocent of the "serious physical harm" component of his felonious assault conviction.  Myers argues this alleged evidence of actual innocence excuses the default of his habeas claims, including Grounds One, Two, Three and Six of his Petition.  *See Coleman v. Thompson*, 501 U.S. 722, 749-750, 111 S.Ct. 2546, 115 L.Ed. 2d 640 (1991) (finding that a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice").

_____

[10] Additionally, it is not clear Myers exhausted any of these claims relating to Ms. Smith's medical records in state court.  He did not raise any such claims on direct appeal and, as noted *supra*, he did not appeal the denial of either of his post-conviction petitions or motion for leave to file motion for new trial to state appellate court.

"[A] district court shall not hold an evidentiary hearing on a habeas claim unless the petitioner, who failed to develop the factual basis of the claim in state court, 'shows that the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Freeman v. Trombley*, 483 Fed. Appx. 51, 66 (6th Cir. 2012) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). "Diligence for purposes of § 2254(e)(2) depends on 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.' " *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2012) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004)).

Here, Myers has not demonstrated that he exercised due diligence as required by § 2254(e)(2).  *See Freeman*, 483 Fed Appx. at 66.  Myers has not alleged he was unaware of Ms. Smith's previous car accidents and/or allegedly pre-existing right shoulder injury at the time of trial.  To the contrary, Myers has represented to this Court that he was in a relationship with Ms. Smith at the time of her alleged November 2010 car accident and was aware at that time that she was transported to the hospital with complaints of right wrist, arm, and shoulder injuries.  (Doc. No. 31-4 at Page ID#878.)  Despite being aware of this evidence, however, Myers did not raise any specific argument regarding Ms. Smith's medical records during trial, on direct appeal, or in either of his App. R. 26(B) Applications.  Moreover, even assuming Myers sufficiently raised this issue in one or both of his state court post-conviction petitions and/or motion for leave to file motion for new trial, he failed to appeal the trial court's denials of those filings to the state appellate court.  Thus, the Court finds Myers has failed to demonstrate diligence for purposes of § 2254(e)(2).

Assuming *arguendo* Myers had been diligent, the Court finds he has not shown an

evidentiary hearing is warranted. In the context of gateway actual innocence claims, the Sixth

Circuit instructs that federal courts "must consider whether an evidentiary hearing can

realistically be expected to enable [petitioner] to prove his factual allegations, which, if true,

would entitle him to relief." *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (citing *Schriro v.

Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)). As the Supreme Court

has noted, "[i]f district courts were required to allow federal habeas applicants to develop even

the most insubstantial factual allegations in evidentiary hearings, district courts would be forced

to reopen factual disputes that were conclusively resolved in the state courts." *Schriro*, 550 U.S.

at 475, 127 S.Ct. 1933. Thus, federal courts should "scrutinize the existing record with an eye

toward determining how it might realistically be expanded to enable petitioner . . . to

demonstrate his actual innocence." *Freeman*, 483 Fed. Appx. at 66.

      The Court finds Myers has failed to demonstrate that an evidentiary hearing would

realistically be expected to enable him to prove factual allegations, which, if true, would entitle

him to relief. The State produced a great deal of evidence at trial regarding Myers' assault of

Ms. Smith and her resultant injuries. Ms. Smith testified she went to Myers' house on the night

of July 15, 2011, arriving at approximately 6:00 p.m. (Doc. No. 37-1 at Tr. 57-58.) When she

told Myers she wanted to end their relationship and started walking out, Myers became verbally

abusive, picked her up, dragged her into the bedroom, and threw her on the bed. (*Id*. at Tr. 59-

61.) When she attempted to leave the bedroom, he grabbed her by the throat, slammed her

against the wall, and threw her to the floor. (*Id.* at Tr. 61.) He later threw her against the dining

room wall and to the floor, where she landed on her chest. (*Id*. at Tr. 62.) At one point, she

made it to the back door but Myers caught up with her and slammed her hand and left leg in the

door.  (*Id*. at Tr. 64.)  Ms. Smith testified that, over the course of several hours that night, she was repeatedly "thrown against the wall, choked, and thrown to the floor."  (*Id.*)

Ms. Smith testified that, as a result of the assault, she was exhausted and in pain.  She suffered multiple abrasions, multiple bruises, and a concussion.  (*Id*. at Tr. 70.)  She went to Marion General Hospital around 4 or 5 a.m. on July 16, 2011.  (*Id*. at Tr. 74-75.)  Photographs taken at the hospital were introduced at trial and showed bruises and scrapes all over Ms. Smith's body, including on her chest, arm, elbow, hand/wrist, and left leg.  (*Id*. at Tr. 76-79.) Shortly thereafter, she went to her personal physician, who referred her to physical therapy to address her complaints of neck stiffness, jaw pain, and shoulder pain resulting from the assault. (*Id*. at Tr. 82-83.)  Ms. Smith attended physical therapy sessions from August to October 2011. (*Id*.)  Her jaw pain lasted for about four weeks into therapy, and her neck stiffness continued for about six weeks before resolving.  (*Id*. at Tr. 83.)  Ms. Smith's shoulder, however, continued to give her "a lot of issues," including pain and an inability to lift heavy objects.  (*Id*. at Tr. 83-84.) She testified she underwent an MRI and was referred to a surgeon, who recommended surgery. (*Id*. at Tr. 84.)  Ms. Smith underwent surgery on her right shoulder in February 2012.  (*Id*.)  She wore a sling for about four to six weeks after surgery, and it then took another four weeks to get some movement back in her shoulder.  (*Id.* at Tr. 85.)  Ms. Smith testified she was "pretty bad" and required pain medication from July 2011 until November 2012.  (*Id*. at Tr. 86.)

Ms. Smith's testimony regarding the nature and extent of her injuries was corroborated by several other witnesses.  Emergency room nurse Carly Westhoven, who treated Ms. Smith during the early morning hours of July 16, 2011, testified Ms. Smith was "very upset and appeared very uncomfortable."  (Doc. No. 37-1 at Tr. 146.)  She stated Ms. Smith presented with

multiple bruises and abrasions, and reported she had been "beaten up by her boyfriend."  (*Id*. at Tr. 147.)  Nurse Westhoven authenticated the photographs taken at the ER, and testified that the photos showed bruises on Ms. Smith's left upper chest, left upper arm, left elbow, right upper arm, right elbow, right forearm and wrist, right shin, and left inner thigh.  (*Id*. at Tr. 155-158.)  She testified Ms. Smith also complained of pain in her right shoulder, neck, and back.[11]  (*Id*. at Tr. 168-169.)

Physical therapist Elizabeth Hensel testified she treated Ms. Smith beginning in August 2011.  (Doc. No. 37-1 at Tr. 177.)  Therapist Hensel testified Ms. Smith told her she had been assaulted and thrown to the ground approximately fifteen times over the course of two hours.  (*Id*. at Tr. 179.)  Ms. Smith's main complaints were neck pain, right jaw pain, headaches, and right shoulder pain as a result of the assault.  (*Id*. at Tr. 179-180.)  During her Initial Evaluation, Therapist Hensel found Ms. Smith had pain and very limited range of motion in her neck; upper back pain; pain and limited range of motion in her shoulder; and tenderness in the muscles at the base of her head.  (*Id*. at Tr. 180.)  Ms. Smith had a limited ability to open her jaw, as well as jaw pain and clicking at the TMJ joint.  (*Id*. at Tr. 181.)  Therapist Hensel explained the clicking sound in Ms. Smith's jaw was indicative of trauma or injury to the area.  (*Id*.)  She also testified Ms. Smith's injuries were consistent with Ms. Smith's explanation of how she was injured.  (*Id*.

---

[11] The State also called Officer Lori Baker from the Wood County Sheriff's Office.  Officer Baker met with Ms. Smith, took photographs of her injuries, and took Ms. Smith's statement on the morning of July 16, 2011.  (Doc. No. 37-2 at Tr. 93-97.)  Officer Baker testified she observed bruising on both of Ms. Smith's arms, a contusion on the upper left just below the collarbone, and scrapes on her forearms.  (*Id*. at Tr. 94.)  Officer Baker took photographs of these injuries, which were introduced and admitted as Exhibits at trial. (*Id*. at Tr. 94.)  Officer Baker testified she did not observe any redness on Ms. Smith's neck, but stated red marks as a result of being grabbed on the neck are "rarely visible" by the time the police get there.  (*Id*. at Tr. 94, 96.)

at Tr. 188.)

Therapist Hensel testified Ms. Smith attended nine physical therapy visits.  (*Id*. at Tr. 181.)  Over the course of these visits, Ms. Smith's jaw improved in about two weeks and her neck pain had improved by the last therapy session in September 2011.  (*Id*. at Tr. 182-183.) However, Ms. Smith continued to complain of pain, weakness, and limited range of motion in her right shoulder.  (*Id*. at Tr. 182-183.)  At the time of discharge, Ms. Smith told Therapist Hensel she had had an MRI of her right shoulder that showed a torn rotator cuff.  (*Id*. at Tr. 183-185.)

Finally, Ms. Smith's orthopedic surgeon, Dr. Aaron Fritz, testified regarding Ms. Smith's right shoulder injury.  Dr. Fritz testified Ms. Smith had a Type I FLAP tear of her right shoulder labrum, as well as impingement syndrome.  (Doc. No. 37-2 at Tr. 113.)  He performed her right shoulder surgery on February 8, 2012.  (*Id*. at Tr. 111-112.)  Dr. Fritz indicated he would not necessarily expect to see swelling or bruising of the shoulder with this type of injury; rather, patients with this condition present with pain and restricted range of motion.  (*Id*. at Tr. 112-113.)  Dr. Fritz indicated Ms. Smith's injuries appeared to be traumatic as opposed to degenerative.  (*Id*. at Tr. 113-114, 122-123.)  He also testified Ms. Smith's injuries could be consistent with falling, being thrown to the ground, or hitting a wall with force.[12]  (*Id*. at Tr. 114, 125.)

In light of the above testimony and evidence, the Court finds Myers has failed to demonstrate an evidentiary hearing is warranted based on evidence that Ms. Smith may have

---

[12] On cross-examination, Dr. Fritz stated that there are a large number of ways an injury like Ms. Smith's could have occurred.  (Doc. No. 37-2 at Tr. 115.)  He also stated that he could not "carbon date it to a specific date when the injury occurred."  (*Id*. at Tr. 116.)

suffered previous injury to her right shoulder.  Myers asserts Ms. Smith was involved in car accidents in August 2007, June 2009, and November 2010.  *See* Doc. Nos. 31-1, 31-2, 31-3.  He claims that, as a result of some or all of these accidents, Ms. Smith complained of injury to her right shoulder.  (Doc. No. 31.)  However, the fact that Ms. Smith may have been involved in car accidents in the years prior to the July 2011 assault does not inevitably lead to the conclusion "that it is more likely than not that no reasonable juror would have found [Myers] guilty beyond a reasonable doubt" of felonious assault.  *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007).  As set forth above, Ms. Smith testified she suffered from several continuing injuries after Myers' assault, including pain and limited range of motion in her neck as well as pain and clicking in her jaw.  Testimony introduced at trial indicated these injuries did not fully resolve until Ms. Smith completed her physical therapy in September 2011, over two months after the assault.  Morever, with respect to her shoulder injury and surgery, testimony was introduced at trial that (1) Myers repeatedly slammed Ms. Smith into the wall and threw her to the floor; (2) Ms. Smith complained of right shoulder pain several hours later at the ER; (3) Ms. Smith's right shoulder injury was consistent with her description of how she was injured; and (4) her shoulder injury appeared to be traumatic as opposed to degenerative.  Evidence that might support the theory of an alternative source of Ms. Smith's shoulder injury is not necessary exculpatory and does not meet the high standard for demonstrating actual innocence, particularly in light of the fact that the most recent of Ms. Smith's previous car accidents occurred over eight months prior to the July 2011 assault.[13]

---

[13] Myers also argues an evidentiary hearing is necessary to consider Ms. Smith's cell phone records, which he claims call into question her time line of events on the night of the assault. The Court rejects this argument.  As discussed *infra*, even if Ms. Smith's estimate that she

Accordingly, the Court finds an evidentiary hearing would not help Myers demonstrate his case is the rare and extraordinary one that meets the demanding gateway actual innocence standard.  In *Schriro*, the Supreme Court cautioned against unnecessarily disturbing the finality of state court judgments and conducting evidentiary hearings based on insubstantial factual allegations.  Myers has failed to show that an evidentiary hearing could realistically be expected to enhance the existing insufficient showing of his actual innocence.

Accordingly, and for all the reasons set forth above, Myers' Motions for *In Camera* Review (Doc. No. 32), Expansion of the Record (Doc. No. 44), Leave to Address Recently Obtained Information (Doc. No. 34), and Evidentiary Hearing (Doc. No. 31) are DENIED.

**B.      Motions for Leave to Supplement and/or Expand the Record (Doc. Nos. 33, 42, 43, 45)**

Myers has also filed several motions for leave to supplement and/or expand the habeas record.  (Doc. Nos. 33, 42, 43, 45.)  For the following reasons, each of these motions is denied.

Under the Rules Governing Section 2254 Cases, a respondent has discretion to attach to his answer parts of the record that he considers relevant.  *See* Rule 5(c) of the Rules Governing Section 2254 Cases.  Pursuant to Rule 5, a district court may thereafter "order that the respondent furnish other parts of the existing transcripts or that parts of untranscribed recordings be transcribed or furnished."  *Id*.  Moreover, Habeas Rule 7 provides that "[i]f the petition is not

---

left Myers' house at 2:00 a.m. was off by an hour or two, it does not invariably lead to the conclusion that she was free to leave Myers' house at any time, as Myers suggests. Moreover, the Court notes that, during closing argument, Myers' counsel specifically questioned Ms. Smith's time line of events, noting the apparent discrepancy between (1) Ms. Smith's testimony that she left Myers' home at 2:00 a.m., it took her an hour and a half to get home, and she took a bath before going to the ER; and (2) Nurse Westhoven's testimony that Ms. Smith arrived at the ER at 3:40 a.m.  (Doc. No. 37-3 at Tr. 77-78.)

32

dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."  Rule 7(a) of the Rules Governing §2254 Cases.  Rule 7 "permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition."  *Lynch v. Hudson*, 2010 WL 2076925 at * 2 (S.D. Ohio May 24, 2010).

Interpreting these Rules, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory . . . and is left to the discretion of the trial judge."  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).  *See also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008); *Bates v. Warden, Chillicothe Correctional Institution*, 2015 WL 5299454 at * 5 (S.D. Ohio Sept. 10, 2015); *Gordon v. Turner*, 2015 WL 3969689 at * 20 (N.D. Ohio June 30, 2015); *Lynch*, 2010 WL 2076925 at * 2.

### 1. Motions relating to October 2012 Bond Revocation Proceedings (Doc. Nos. 33, 45)

Myers has filed two motions seeking to expand the habeas record to include the transcript of a bond revocation hearing that occurred in October 2012.  (Doc. Nos. 33, 45.)  In his "Motion for Leave to Supplement the Record to Include the October 11, 2012 Bond Revocation Transcript," Myers argues "his posted bond was maliciously revoked during pretrial proceedings, and that his trial counsel was ineffective for failing to raise the issue that the petitioner should not have been unlawfully detained during pretrial proceedings."  (Doc. No. 33 at 1.)  He asserts the trial court's revocation of his bond violated his due process rights and identifies three "claims" relating to that argument.[14]  Myers asks the Court to supplement the

---

[14] Following a hearing in October 2012, the trial court issued a written decision amending Myers' bond.  (Doc. No. 33-8.)  The trial court concluded as follows: "The testimony and

record with the transcript of the October 2012 bond revocation hearing and "strongly urges this Court to full[y] review the revocation process of the petitioner's pretrial bond to prevent any other State Court from depriving a defendant of his constitutional right to participate in his defense." (*Id*. at 3.)

Respondent indicates he does not oppose supplementing the habeas record with the transcript of the bond revocation hearing and includes as an exhibit a full and complete copy of the transcript of that proceeding. (Doc. Nos. 36, 36-1.) However, Respondent does object to Myers' argument that this Court should consider his "claims" relating to the revocation of his bond, asserting "this Court is simply not the proper forum to address the claims of improper bond revocation that Myers presents in his motion." (Doc. No. 36 at 8.)

Subsequently, on April 20, 2017, Myers filed a "Motion for Leave to Further Address October 11, 2012 Bond Revocation and Docket No. 33." (Doc. No. 45.) Therein, Myers asserts that he "fully raised the issue of the pretrial bond revocation within the filed Traverse, and further addressed in the Doc. No. 33 filing and the recently filed response to the Respondents' response to the Traverse filed on April 4, 2017." (Doc. No. 45 at 1.) He then argues "a review

---

exhibits presented by the state show that Mr. Myers violated the bond condition forbidding him from committing any criminal offenses. The state showed that Mr. Myers possessed marijuana and gifted it to Ms. Dieterle and her boyfriend. It also showed that Mr. Myers caused Ms. Dieterle mental distress both by sending her unwanted text messages after being told his messages were unwanted and by painting unflattering sentiments about her on his garage. The court finds these violations of the bond conditions is sufficient justification for amending Mr. Myers' bond." (*Id*. at 4.) The trial court then set Myers' bond on both counts at $100,000.00 without 10% applicable. (*Id*.) In his Motion for Leave (Doc. No. 33), Myers asserts (1) the State failed to prove that he violated the conditions of his bond by providing marijuana to the Ms. Dieterle; (2) the State failed to prove that Myers had been harassing Ms. Dieterle; and (3) "the Constitutional violation and abuse of discretion that was inflicted upon Petitioner during pretrial proceedings was cruel and unusual punishment that affected Petitioner's ability to mount a proper defense." (Doc. No. 33 at 3-10.)

of the bond revocation would be essential to this case as it clearly appears that the Petitioner is not going to get a fair appeal on this issue within any Ohio Court, as the Supreme Court of Ohio has failed to accept Jurisdiction of the appeal, that address abuse of discretion handed down by the State Trial Court."  (*Id*. at 4.)

Myers' motions to expand the habeas record to include the transcript of the October 2012 bond revocation hearing are denied.  Myers does not raise any claim in his Petition relating to the revocation of his bond.  Nor has he moved to amend his Petition to raise any such claim. Rather, Myers asserts this Court should expand the record to include the transcript of the bond revocation hearing (and consider arguments relating to that proceeding) because he "fully raised" the issue in his Traverse (Doc. No. 30) and his Motion for Leave to Supplement (Doc. No. 33.) This argument is rejected for the following reasons.

The Sixth Circuit has held that a district court does not err in declining to address claims first raised in a traverse rather than in the habeas petition.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  *See also Smith v. Bagley*, 2014 WL 1340066 at fn 15 (N.D. Ohio April 13, 2014); *Palmer v. Bagley*, 2005 WL 3965400 (S.D. Ohio, Dec.16, 2005) *report and recommendation adopted by* 2006 WL 1027733 (S.D. Ohio April 17, 2006)("A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus."); *Burns v. Birkett*, 2007 WL 2318740, *5, n. 2 (E.D. Mich. Aug.9, 2007) ("Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court.").  Here, Myers filed his Petition over a year ago, in March 2016, and failed to raise any habeas claims relating to the state trial court's revocation of his bond.  (Doc.

35

No. 1.)  In September 2016, the Court allowed Myers to amend his Petition to add a sufficiency of the evidence claim; however, Myers did not seek at that time (or since) to amend his Petition to assert any claims relating to the state court's bond revocation proceedings.  (Doc. No. 26.) Myers' Traverse and Motion for Leave to Supplement (Doc. No. 33) are not the proper vehicles in which to raise new habeas claims relating to his bond revocation proceedings and, therefore, the Court finds any such claims are not properly before this Court.

Accordingly, Myers' Motions for leave to Supplement the Record (Doc. No. 33) and "further Address" (Doc. No. 45) the October 2012 Bond Revocation Hearing are without merit and DENIED.

**2. Motion Requesting Leave to Expand the Record to Include Cell Phone Records (Doc. No. 42)**

Myers next asks the Court to expand the record to include cell phone records of Ms. Smith that were subpoenaed by his former defense counsel, Ms. Schemrich, but not introduced at trial.  (Doc. No. 42.)  He argues these records are "essential evidence that establishes the whereabouts of Julie Smith and when Ms. Smith actually left the Petitioner's home the night in question."  (*Id*. at 1.)  Specifically, Myers argues as follows:

> The cell phone records establish a true point in time as to when Ms. Smith actually left the Petitioner's home.  Establishing that Ms. Smith had her keys, left on her own as the Petitioner was asleep and also establishes that Ms. Smith left way before 2:00 AM as testified.  Also establishing that Ms. Smith is embellishing her story as to being abducted, and assaulted by the Petitioner.  As no one truly knows when she left or where she went after leaving the Petitioner's home, while the Petitioner's slept.

> This Honorable Court would need to question how Ms. Smith drove an hour an a half, back to Marion, Ohio.  Where she took a shower/bath . . . and then made it to the Marion General Hospital Emergency Room by 3:40 AM.  Simply put Ms. Smith left on her own because she had her car keys and was not held against her will.

36

(*Id*. at 3.) In sum, Myers claims the habeas record should be expanded to include Ms. Smith's cell phone records because they "repute [her] credibility" and establish his actual innocence.

Myers' motion is denied. Ms. Smith's cell phone records were not introduced or admitted as Exhibits at Myers' trial. Thus, the Court cannot consider Ms. Smith's cell phone records in the context of Myers' sufficiency of the evidence claim.[15] *See Herrera,* 506 U.S. at 402 (finding that the "sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.' *Jackson* does not extend to non-record evidence, including newly discovered evidence.")(citing *Jackson*, 443 U.S. at 318). *See also Brown*, 567 F.3d at 204-205; *Group,* 158 F. Supp.3d at 665; *Payton*, 2011 WL 3862406 at * 7; *Eley*, 2006 WL 2990520 at * 22.

Moreover, the Court rejects Myers' argument that the habeas record should be expanded to include Ms. Smith's cell phone records in order to demonstrate his actual innocence on the abduction conviction. At trial, Ms. Smith testified Myers took her car keys and refused to let her leave his house for several hours, despite her repeated requests that she be allowed to leave. (Doc. No. 37-1 at Tr. 60-67.) Indeed, Ms. Smith explained that, at one point, she made it to the back door but Myers caught up with her, slammed her hand and left leg in the door, and dragged her back in the house. (*Id*. at Tr. 64.) Ms. Smith testified that, after several hours, she "changed her tactics" and decided to allow Myers to have sex with her in order to "calm him down" in the hopes she would then be able to leave. (*Id*. at Tr. 68-70.) After Myers and Ms. Smith had sex,

---

[15] There is also no basis to consider Ms. Smith's cell phone records with regard to Myers' other habeas claims. Specifically, Myers has not established Ms. Smith's cell phone records bear any relevance to Grounds One, Two and Three of the Petition, each of which relate in some fashion to the trial court's jury instructions regarding lesser-included offenses. Further, the Court will not consider Ms. Smith's cell phone records in the context of Ground Four of Myers' Petition, as manifest weight of the evidence claims are not cognizable in federal habeas proceedings.

Myers dozed off and eventually allowed her to leave.  (*Id*. at Tr. 69-70.)  Ms. Smith testified she left Myers' home at approximately 2:00 a.m., and estimated the drive back to her house was approximately an hour and a half long.  (*Id*. at Tr. 67, 96, 105.)  She stated that, as she was driving, Myers called her and they spoke on her cell phone until she arrived back home.  (*Id*. at Tr. 119.)  Ms. Smith testified she then took a bath, changed her clothes, and went to the emergency room.  (*Id*. at Tr. 116-117.)  Nurse Westhoven testified the emergency room records indicated Ms. Smith arrived at the ER at 3:40 a.m.  (*Id*. at Tr. 149.)

Myers argues Ms. Smith's cell phone records will show that she ended her call with Myers at 2:25 a.m and, therefore, she could not possibly have left his home at 2:00 a.m., as she testified at trial.  Even assuming Ms. Smith's cell phone records demonstrate she left Myers' home prior to 2:00 a.m., this does not demonstrate Ms. Smith was free to leave Myers' home at any time.  At best, Ms. Smith's cell phone records might show she was off by an hour or two when she estimated the time that she left Myers' home.  The records do not, however, detract from Ms. Smith's testimony that Myers refused her repeated requests to leave and that he, in fact, physically prevented her from doing so by taking her keys, slamming the door on her arm and leg, and dragging her back in the house.  Moreover, during closing argument, Myers' counsel specifically questioned Ms. Smith's time line of events, noting the apparent discrepancy between (1) Ms. Smith's testimony that she left Myers' home at 2:00 a.m., it took her an hour and a half to get home, and she took a bath before going to the ER; and (2) Nurse Westhoven's testimony that Ms. Smith arrived at the ER at 3:40 a.m.  (Doc. No. 37-3 at Tr. 77-78.)

Accordingly, Myers' motion to expand the habeas record to include Ms. Smith's cell phone records is DENIED.  (Doc. No. 42.)

38

3.      **Motion for Leave to Expand the Record to Include Documentation that Ms. Smith received compensation from the Ohio Victims of Crime Compensation Fund (Doc. No. 43)**

Finally, Myers ask the Court to expand the habeas record to include "any and all written findings of fact and decision concerning an award of reparations" to Ms. Smith pursuant to the Ohio Victims of Crime Compensation Fund ("the Fund").  (Doc. No. 43.)  Myers notes Ms. Smith testified at trial that she made a claim to the Fund and that it was paid prior to trial.  (*Id.* at 1.)  He argues as follows:

> The fact that the alleged victim was paid prior to the May 2013 jury trial, and the review of Defendant's Exhibits A through K [regarding Ms. Smith's car accidents] that proves the actual origin of the injuries only concludes that the State Prosecution and State Attorney General's Office, paid the alleged victim, the reparation funds to secure false testimony, to gain a wrongful conviction of an innocent man.  All while the State Prosecution committed the act of 'suborn perjury' as the State Prosecution, knew the fact that the alleged victim's injuries came from one of the three severe car accidents. . . Which clearly establishes that the Petitioner has proven that the State Prosecution knew that the following testimony [of Ms. Smith] was false.

(*Id*. at 3.)

Myers' motion is denied.  Myers has failed to establish that any "written findings of fact and decision" relating to Ms. Smith's award of reparations from the Fund bear any relevance to the specific grounds for relief at issue in Myer's habeas Petition.  Accordingly, Myers' Motion for Leave to Expand the Record to Include "Written Findings Pursuant to Ohio Revised Code 2743.59" is DENIED.  (Doc. No. 43.)

### IV.  Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2155, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 132 S.Ct. at 2155. *See also Lopez v. Smith*, ––– U.S. –––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, ––– U.S. –––, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

40

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

41

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## V. Analysis of the Petition

### A.      Cognizability

In Ground Four of his Petition, Myers argues "the conviction is against the manifested [sic] weight of the evidence because the evidence only supports a conviction for the lesser offenses of assault R.C. 2903.11 and unlawful restraint R.C. 2905.03."  (Doc. No. 1.) Respondent asserts this claim should be dismissed because it is not cognizable in federal habeas proceedings.

Federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010 ). A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition.  *Norton v. Sloan*, 2017 WL 525561 at * 4 (N.D. Ohio Feb. 9, 2017).  *See also Swain v. Lazaroff*, 2016 WL 6605140 at * 15 (N.D. Ohio May 23, 2016) ("A manifest weight of the evidence claim . . . raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding"); *Glenn v. Bunting*, 2015 WL 1843054 at * 8 (N.D. Ohio April 22, 2015) (same);  *Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (Ohio 1997)).

42

Accordingly, Myers' manifest weight of the evidence claim as set forth in Ground Four is not cognizable in these federal habeas proceedings and should be DISMISSED.

## B.    Exhaustion and Procedural Default

Respondent argues Grounds One, Two, Three, and Six are procedurally defaulted because they were never properly presented to the state courts.  (Doc. Nos. 25, 37.)  Myers asserts there is cause and prejudice to excuse the default.  (Doc. Nos. 30, 40.)  He also argues the procedural default of these claims should be excused on the grounds that he is actually innocent. (*Id.*)    Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[16] *Id.*

---

[16] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002).

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.[17]  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91

---

[17] Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

L.Ed.2d 397 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

### 1.    Grounds One, Two, and Three

Grounds One, Two, and Three of Myers' Petition allege claims of ineffective assistance of trial counsel, trial court error, and prosecutorial misconduct, each on the basis of allegedly incorrect jury instructions.  Specifically, Ground One alleges trial counsel was ineffective for allowing incorrect instructions as to the lesser included offenses of assault and unlawful restraint

(Doc. No. 1 at 5); Ground Two alleges the trial court erred by incorrectly instructing the jury as to the lesser included offenses of assault and unlawful restraint (Doc. No. 1 at 7); and Ground Three alleges the prosecution improperly argued against the instructions for the lesser included offenses of assault and unlawful restraint (Doc. No. 1 at 8.)

Respondent claims each of these Grounds are procedurally defaulted because they were not raised on direct appeal.  Respondent asserts that "[t]hough Myers will claim that he presented them in his Rule 26(B) Application to reopen his appeal they cannot be preserved for federal review in this manner."  (Doc. No. 25 at 9.)

Here, Myers raised two claims on direct appeal to the state appellate court, alleging (1) the trial court erred in admitting into evidence the testimony of Katherine Mull; and (2) the verdict was against the manifest weight of the evidence.  (Doc. No. 25-1, Exh. 12.)  Neither of these claims made any mention of any of the various arguments raised in Grounds One through Three of the instant habeas Petition.  The state appellate court affirmed Myers' conviction and sentence, and Myers did not appeal to the Supreme Court of Ohio.  (Doc. No. 25-1, Exh. 14.)

In his December 2013 post-conviction petition, Myers raised one claim relating to the jury instructions, as follows: "Trial Counsel along with the Courts failed to instruct the jury the difference between serious physical harm and just plain physical harm as underlined in Section 2901.01 as defined the State failed to prove serious physical harm. Had the jury been informed of the difference of the two, then a conviction of felonious assault would have not been rendered."  (Doc. No. 25-1, Exh. 21 at Page ID#388.)  The state trial court rejected Myers' jury instruction claim, finding "on the whole, the instructions read to Mr. Myers's jury sufficiently explained the difference between serious physical harm and physical harm."  (Doc. No. 25-1,

46

Exh. 23 at Page ID#400.)  Myers did not appeal this ruling to the state appellate court.

Myers also raised jury instructions claims in his December 2014 Motion for Leave to File Motion for  New Trial (Doc. No. 25-1, Exh. 24) and January 2015 Petition for Post-Conviction Relief (Doc. No. 25-2, Exh. 25.)  The state trial court denied Myers' Motion for Leave to File Motion for New Trial as untimely (Doc. No. 25-2, Exh. 26) and denied his Petition for Post-Conviction Relief on the grounds Myers had failed to demonstrate he was unavoidably prevented from discovering the facts underlying his claims (Doc. No. 25-2, Exh. 27.)  Myers did not appeal either of these rulings to the state appellate court.

The Court finds Grounds One, Two, and Three are procedurally defaulted.  As noted above, Myers did not raise these claims on direct appeal to the state appellate court.  Moreover, assuming *arguendo* he properly raised them in his Petitions for Post-Conviction Relief and/or his Motion for Leave to File Motion for New Trial, the record reflects Myers failed to appeal the trial court's denial of these post-conviction filings to the state appellate court.  Myers may no longer do so, as Ohio does not permit delayed appeals in post-conviction proceedings.  *See Wright v. Lazaroff*, 643 F. Supp.2d 971, 987 (S.D. Ohio 2009) ("The Supreme Court of Ohio has specifically held that "a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief determination ...") (citing *State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 378 (1984)); *Carley v. Hudson*, 563 F. Supp.2d 760, 775 (N.D. Ohio 2008) (same); *Scott v. Warden, Pickaway Correctional Inst*., 2014 WL 29514 at * 6 (S.D. Ohio Jan. 3, 2014) (finding claim procedurally defaulted because petitioner failed to appeal the trial court's denial of his post-conviction petition and petitioner could no longer appeal because "Ohio does not permit delayed appeals in post-conviction proceedings.")  *See also Nesser v. Wolfe*,  2010 WL

47

1141006, at *4 (6th Cir. March 25, 2010) (holding that "Ohio does not permit delayed appeals in postconviction proceedings, and this is an adequate and independent ground upon which to deny relief.") (citation omitted).  Thus, the Court finds Grounds One, Two, and Three are defaulted.

The Court notes that, in both his first and second App. R. 26(B) Applications, Myers raised ineffective assistance of *appellate* counsel claims relating to appellate counsel's failure to raise certain arguments relating to the jury instructions on direct appeal.  (Doc. No. 25-1, Exh. 15; Doc. No. 25-2, Exh. 28.)  This does not, however, preserve Grounds One, Two, and Three as set forth in Myers' Petition for federal habeas review.[18]  Indeed, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F.Supp.2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*,

---

[18]  Myers does not raise any ineffective assistance of appellate counsel claims in the instant Petition.

668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp.3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, 2012 WL 2711463 at *10 (N.D. Ohio March 14, 2012) *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012).  Thus, Myers' App. R. 26(B) Applications did not preserve his underlying ineffective assistance of trial counsel (Ground One), trial court error (Ground Two), or prosecutorial misconduct (Ground Three) claims for habeas review.

In light of the above, the Court finds Grounds One through Three of Myers' Petition claims are procedurally defaulted.

### a.     Cause and Prejudice

Myers may nevertheless obtain a merits review of these claims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  In his Traverse, Myers argues "there is cause and prejudice to excuse his failure to raise the claims discussed above and below due to the State's assignment of Appellate Counsel that could be nothing more than ineffective, because he could not raise the issue of his own ineffectiveness at the trial court level, or issues that would have exposed his ineffectiveness at the trial court level."  (Doc. No. 30 at 3.)

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004); *Smith v. Ohio, Department of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Correctional Facility*, 2016 WL 4177174 at * 3 (N.D.

Ohio Aug. 8, 2016). However, a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit. *See Moore*, 708 F.3d at 776; *Davie*, 547 F.3d at 312; *Berry*, 2016 WL 4177174 at *3. Thus, if a state court rejects an ineffective assistance of appellate counsel claim on the merits, a petitioner's default may not be excused on the basis of appellate counsel's failure to raise the underlying claim on direct appeal. *See Moore*, 708 F.3d at 776-777 ("Moore cannot show ineffective assistance of his appellate counsel for failing to raise the issue on appeal because the underlying claim lacks merit. *Davie*, 547 F.3d at 312. The state court did not unreasonably apply *Strickland* in so holding. The claim is procedurally defaulted and that default is unexcused."); *Berry*, 2016 WL 4177174 at * 3.

With these principles in mind, the Court will address each of Myers' first three habeas grounds separately to determine whether Myers has established cause and prejudice to excuse their default.

### i.     Ground One: Ineffective Assistance of Trial Counsel

As noted above, Myers did not raise Ground One of his habeas Petition on direct appeal. In his first Application to Reopen his Appeal under Ohio App. R. 26(B), Myers argued his appellate counsel was ineffective for failing to assert that his trial counsel was ineffective for "allowing incorrect instructions as to the lesser-included offense of assault and as to the charged offense of felonious assault and because counsel did not properly pursue the alternative conviction for the lesser offense." (Doc. No. 25-1, Exh. 15.) Myers raises the same underlying

50

ineffective assistance of *trial* counsel argument in Ground One of the instant habeas Petition.[19]

On November 12, 2014, the state appellate court addressed this claim on the merits and

rejected it, as follows:

> The trial court instructed the jury on the elements of abduction, the
> lesser-included offense of unlawful restraint, felonious assault under R.C.
> 2903.11(A)(1), and the lesser-included offense of assault under R.C.
> 2903.13(A).  Trial counsel did not request, and the trial court did not provide,
> an instruction on assault under R.C. 2903.13(B), which is also a lesser-included
> offense.  Under R.C. 2903.11(A)(1), felonious assault is committed when a
> person "knowingly" causes "serious" physical harm to another.  Under R.C.
> 2903.13(A), assault is committed when a person "knowingly" causes or
> attempts to cause "physical harm" to another.  And assault under R.C.
> 2903.13(B) is committed when a person "recklessly" causes "serious" physical
> harm to another.
>
> Myers states that trial counsel approached his defense by (1) denying that the
> incident occurred at all, or (2) challenging the characterization of J.S.'s injuries
> as "serious" physical harm.  Myers complains that defending the claim by
> challenging the seriousness of J.S.'s injury was "largely hopeless," given that
> defense counsel allegedly conceded the serious nature of J.S.'s rotator cuff
> injury during this questioning of J.S.'s physical therapist.  He asserts that the
> jury should have been instructed as to lesser-included offenses under both R.C.
> 2903.13(A) and (B) because the fact that J.S.'s rotator cuff injury was not
> immediately discovered was indication that Myers acted only recklessly – and

---

[19] As part of Ground One, Myers also argues trial counsel was ineffective for allowing
instructions as to the lesser-included offenses of unlawful restraint.  (Doc. No. 1.)  This
particular underlying claim of ineffective assistance of trial counsel was not raised in Myers'
first 26(B) Application.  (Doc. No. 25-1, Exh. 15.)  It does appear to have been raised in his
Second 26(B) Application, filed in October 2015.  (Doc. No. 25-2, Exh. 28.)  However, the
state appellate court denied Myers' second 26(B) Application as both untimely and barred
by *res judicata*, and the Ohio Supreme Court declined jurisdiction.  (Doc. No. 25-2, Exhs.
29, 32.)  While ineffective  assistance of appellate counsel may serve as "cause" to excuse
a procedural default, it may only do so if the ineffective assistance of appellate counsel claim
is not itself  defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451, 120 S.Ct. 1587,
146 L.Ed.2d 518 (2000); *Wogenstahl,* 668 F.3d at 321.  Because the state appellate court
denied Myers' second 26(B) Application on procedural grounds, the ineffective assistance
of appellate counsel claims raised therein are themselves procedurally defaulted and may not
serve as "cause" to excuse the default of Myers' habeas claims relating to jury instructions
on the lesser-included offense of unlawful restraint.

not knowingly – in causing her injury.  He also asserts that the trial court's explanation of the difference between felonious assault and assault was incorrect because it omitted the instruction pertinent to provision (B), and that its instruction as to felonious assault was erroneous because it provided an incorrect definition of the *mens rea* element of the offense. . . He contends that his appellate counsel was ineffective for not having raised these errors on appeal.

* * *

A defense request for reopening under App. R. 26(B)(5) must be assessed under the two-prong analysis found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998).  This requires Myers to prove (1) that his counsel was deficient for failing to raise the issues he now presents; and (2) that had he presented those issues on appeal, there was a "reasonable probability" that he would have been successful.  *Id*.  Myers "bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal."  *Id.*

"Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."  *State v. Wine*, - Ohio St.3d -, 2014-Ohio-3948, - N.E.3d -, ¶ 21, citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.  The Ohio Supreme Court has cautioned against providing lesser-included offense instructions in cases where the facts do not support such an instruction.  *Id*. at ¶ 22.  It recognized that the giving of unwarranted lesser-included offense instructions can provide the jury with the means to reach a compromise verdict.  *Id*.  It explained that compromise verdicts are detrimental to both the state and the defendant because "[they] can allow juries to lessen punishment at their unlimited discretion, even when they find the defendant guilty of the greater offense beyond a reasonable doubt."  *Id*.  They can also "allow juries to convict a defendant of a crime of which he is not guilty beyond a reasonable doubt with a clearer conscience than if only the greater offense were charged."  *Id*., quoting *State v. Wilkins*, 64 Ohio St.2d 382, 387, 415 N.e.2d 303 (1980).  This is particularly possible in cases in which the defendant presents an all-or-nothing defense.  *Id*. at ¶ 23.

The difference between felonious assault under R.C. 2903.11(A)(1) and assault under R.C. 2903.13(B) ("reckless assault") lies in the *mens rea* required.  Felonious assault is committed "knowingly."  Reckless assault is committed "recklessly."  "Knowingly" is defined in R.C. 2901.22(B).  "A person acts

knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  A person acts "recklessly" under provision (C) of that statute "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Myers' primary defense at trial was that J.S.'s accusations against him were untrue.  What he suggests now is that trial counsel should have argued that while he may have caused serious physical harm to J.S., he did so without realizing that serious physical harm was "probable."  He insists that this required trial counsel to seek an instruction on reckless assault and that appellate counsel was ineffective in not pursuing this defense and in not assigning as error the failure to request this instruction.

**Ohio courts have recognized that defense counsel's decision to seek acquittal rather than invite conviction on a lesser-included offense is a tactical, strategic decision that does not amount to ineffective assistance of counsel.  *State v. Owens*, 5th Dist. Richland No. 2004-CA-87, 2005-Ohoi-4402, ¶ 53.  Although counsel may have chosen a strategy that proved unsuccessful, the fact that there may have been another available strategy does not amount to a breach of an essential duty to the client.  *Id.* That is the situation we are presented with here.  Myers' counsel elected to pursue acquittal instead of conceding that a physical confrontation took place and arguing that the resulting rotator cuff injury was not viewed by Myers as a probable consequence.  Because there is no "reasonable probability" that if raised on appeal, this argument would have been successful, we will not reopen Myers' appeal on this basis.  To that end, we also reject Myers' argument that the trial court incorrectly advised the jury that the difference between felonious assault and assault is the requirement that the injury to the victim be "serious."**

(Doc. No. 25-1, Exh. 16) (emphasis added).

In order to determine whether a claim of ineffective assistance of appellate counsel may serve to excuse the procedural default of the underlying claim, a district court may look to the strength of the underlying claim.  *See Davie*, 547 F.3d at 312; *Moore*, 708 F.3d at 778; *Manoku v. Lafler*, 2015 WL 4715768 at * 17 (E.D. Mich. Aug. 7, 2015).  Because the state appellate

court in the instant case ruled on the merits, its decision is entitled to AEDPA deference. *See Moore*, 708 F.3d at 778; § 2254(d)(1).

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1998), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. This standard applies "regardless of whether a[p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable—a substantially higher threshold.") (internal quotation marks omitted). When reviewing a state court's ruling on an ineffective assistance of counsel claim, federal habeas courts must employ "a 'doubly deferential' standard of review that

54

gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ——

U.S. ——, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S.

170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ("Our review of the [state court's] decision is

thus doubly deferential. We take a highly deferential look at counsel's performance through the

deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

 Here, the state appellate court determined Myers' appellate counsel was not ineffective

for raising ineffective assistance of trial counsel based on trial counsel's failure to seek a jury

instruction on the lesser-included offense of reckless assault.  The state appellate court

concluded that, had Myers' appellate counsel raised a claim of ineffective assistance based on

trial counsel's failure to object to the trial court's lesser-included offense jury instructions, that

claim would have failed because trial counsel's decision was a strategic one.

 The United States Supreme Court has emphasized that, in determining whether counsel

performed deficiently under *Strickland*, "[w]e begin with the premise that 'under the

circumstances, the challenged action[s] might be considered sound trial strategy." *Pinholster*,

131 S.Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689).  Indeed, *Strickland* commands reviewing

courts to "affirmatively entertain the range of possible 'reasons [defense] counsel may have had

for proceeding as they did,'" *Pinholster*, 131 S.Ct. at 1407, and "indulge [the] strong

presumption" that counsel "made all significant decisions in the exercise of reasonable

professional judgment." *Strickland,* 466 U.S. at 689-90, 692.[20]  *See also Holmes v. Goodrich*,

---

[20] Like federal law, Ohio law regarding ineffective assistance claims requires reviewing
courts to be highly deferential of trial counsel's strategic decisions.  *See State v. Carter*, 651
N.E.2d 965, 977, 72 Ohio St.3d 545, 558 (Ohio 1995) ("Judicial scrutiny of counsel's
performance is to be highly deferential, and reviewing courts must refrain from
second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective
assistance of counsel, the appellant must overcome a strong presumption that, under the

2015 WL 127925 at * 16 (N.D. Ohio Jan. 8, 2015) ("Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective.")

The record reflects trial counsel's strategy was to deny that Myers abducted or assaulted Ms. Smith.  Myers called two witnesses at trial, both of whom were neighbors of Myers in July 2011.  The first witness, Christie Kapelka, testified she drove past Myers' home at approximately 8:00 to 8:30 p.m on the night of July 15, 2011 and saw Ms. Smith sitting on the porch swing in no apparent distress.  (Doc. No. 37-3 at Tr. 9-11).  The second witness, Nikki Lafferty, testified she was walking her dog around 10:30 p.m. that night and saw Ms. Smith through the kitchen window, again in no apparent distress.  (*Id*. at Tr. 26-28.)  Both witnesses testified they heard no screaming or yelling from Myers' house during the evening of July 15, 2011.  (*Id*. at Tr. 11-12, 28-30.)  During closing argument, Myers' trial counsel questioned Ms. Smith's credibility and emphasized alleged inconsistencies in her testimony.  (*Id*. at Tr. 69-82.)  He pointed to testimony that Ms. Smith had no marks on her throat and, further, questioned whether Ms. Smith's bruises were actually from the night in question.  (*Id*. at Tr. 80-82.)  Summing up, Myers' counsel argued as follows to the jury:

> So, really, at the end of the day here what we're supposedly talking about is a woman who was slammed to the floor multiple times.  A woman who was slammed into the wall multiple times.  And if you look at those medical records, there isn't a single abrasion, drywall abrasion, carpet abrasion, nothing on her face.  There's no head trauma at all.  There's no impact point for the concussion,

---

circumstances, the challenged action might be considered sound trial strategy."); *State v. Smith*, 731 N.E.2d 645, 652, 89 Ohio St.3d 323, 328 (Ohio 2000) ("Yet, even if we viewed counsel's trial strategy as questionable, such a strategy should not compel us to find ineffective assistance of counsel. In these situations, we normally defer to counsel's judgment.").

okay?  There's no scraping from catching the wall, no burning from catching the floor.  Somehow in the midst of being slammed up against the wall multiple times and being slammed to the floor multiple times and being slammed to the floor multiple times she escaped any indication of any of this trauma on her face.  That's not possible. . . .  This is not the face of a woman who's been slammed to the floor multiple times.  There isn't a mark on her from the neck up, not one. Let me tell you, that's what the state said happened.  That is their theory of the case.  This picture is all you need to conclude with certainty what really happened in that house, okay, because what they say happened didn't."

(*Id*. at Tr. 84.)[21]

In sum, Myers' trial counsel chose an "all or nothing" defense strategy, urging the jury to determine that Myers did not abduct or assault Ms. Smith.  Thus, as the state appellate court acknowledged, it would have been inconsistent for defense counsel to request instructions on lesser-included offenses that involved Myers engaging in a physical altercation with Ms. Smith, such as reckless assault.  The mere fact that a trial strategy was unsuccessful is not sufficient to support a conclusion that trial counsel's performance was deficient.  *See Kelly v. Lazaroff*, 2015 WL 4546996 at * 11 (N.D. Ohio July 28, 2015).  *See also State v. Conway*, 848 N.E.2d 810, 832, 109 Ohio St.3d 412, 432–33 (Ohio 2006) ("That this strategy was unsuccessful and the jury ultimately found Conway guilty ... is not a basis for finding ineffective assistance of counsel. Trial counsel's strategic choices must be accorded deference and cannot be examined through the distorting effect of hindsight.").  Given well-established law regarding ineffective assistance of counsel claims that challenge a trial counsel's strategic decisions, the Court finds the state appellate court reasonably determined that, even if appellate counsel raised an argument

---

[21] Along the same lines, defense counsel concluded his closing argument as follows:  "Be real in your deliberations.  Keep in mind the scope of the violence that the state is trying to convince you in and look at this picture.  It didn't happen.  And because it didn't happen, and because you have no other explanation, your verdict has to be not guilty."  (Doc. No. 37-3 at Tr. 85.)

regarding trial counsel's failure to request the lesser-included offense jury instructions at issue, that argument would not have succeeded.

Because the state court reasonably determined Myers' appellate counsel was not ineffective for raising this underlying ineffective assistance of trial counsel claim, the Court finds Myers has not satisfied the cause requirement to overcome his default of Ground One. *See e.g., Moore,* 708 F.3d at 778 ("That procedural default is not excused because even if his appellate counsel had raised the issue, the underlying claim was meritless."); *Warren v. Smith*, 2010 WL 2837001 at * 9 (N.D. Ohio April 29, 2010) (even where petitioner was represented by the same counsel at trial and on direct appeal, court found petitioner did not establish cause to excuse the default of habeas claim because state appellate court considered petitioner's 26(B) Application on the merits and determined appellate counsel was not deficient for failing to raise issue on direct appeal).

Moreover, even assuming Myers could demonstrate cause to excuse the default of Ground One,[22] the Court finds he has not set forth any evidence of actual prejudice. *See*

---

[22] Myers asserts the default of Grounds One, Two, and Three should be excused because he was represented by the same counsel at trial and on direct appeal. In *Hicks v. Collins*, 384 F.3d 204 (6th Cir. 2004), the Sixth Circuit noted, in the context of analyzing Ohio's *res judicata* rule, that "if the defendant was represented by the same counsel at trial and on direct appeal, claims of ineffective assistance of trial counsel are not defaulted because appellate counsel will rarely assert his own ineffectiveness at trial." However, the Sixth Circuit has since stated that it "has not squarely determined the separate issue of whether having the same counsel at trial and on appeal constitutes cause excusing default of an ineffectiveness claim." *Duyst v. Rapelje*, 483 Fed. Appx. 36 at fn 3 (6th Cir. 2012). This Court need not resolve this issue because, even if the fact that Myers was represented by the same counsel at trial and on appeal was sufficient to establish cause to excuse the default of Ground One, Myers is unable to establish the prejudice necessary to excuse the default, for the reasons set forth *infra*. Moreover, even if the Court were review the merits of Myers' ineffective assistance of trial counsel claim, it would find it to be without merit, again for the reasons set forth *infra*.

*Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir.2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").  As noted *supra*, prejudice (for purposes of excusing a procedural default) does not occur unless the petitioner demonstrates a "reasonable probability" the outcome of the state court proceedings would have been different absent the alleged constitutional errors.  *See Franklin*, 434 F.3d at 417; *Mason*, 320 F.3d at 629. Here, the state appellate properly determined appellate counsel was not ineffective because it was not "reasonably probable that Myers would have succeeded" had appellate counsel raised the underlying ineffective assistance of trial counsel claim set forth in Myers' first 26(B) Application.  Therefore, Myers cannot demonstrate he was prejudiced by appellate counsel's failure to raise this issue.

Accordingly, and for all the reasons set forth above, the Court finds Myers has failed to establish cause and prejudice to excuse the default of Ground One.

### ii.        Grounds Two and Three

Myers also failed to raise Grounds Two and Three of his habeas Petition on direct appeal. In his first 26(B) Application to Reopen his Appeal, Myers argued his appellate counsel was ineffective for failing to assert that "the trial court erred by incorrectly instructing the jury as to the lesser-included offense of assault and as to the charged offense of felonious assault."  (Doc. No. 25-1, Exh. 15.)  He also argued his appellate counsel was ineffective for failing to assert that the State "engaged in prosecutorial misconduct by improperly arguing against the lesser included offense of assault by incorrectly stating the difference between the charged offense and the lesser offense."  (*Id*.)  Myers raised these arguments in Grounds Two and Three of the instant habeas

59

Petition.[23]

The state appellate court considered these claims on the merits and rejected them as

follows:

> [Myers] asserts that the jury should have been instructed as to lesser-included
> offenses under both R.C. 2903.13(A) and (B) because the fact that J.S.'s rotator
> cuff injury was not immediately discovered was indication that Myers acted only
> recklessly – and not knowingly – in causing her injury. He also asserts that the
> trial court's explanation of the difference between felonious assault and assault
> was incorrect because it omitted the instruction pertinent to provision (B), and
> that its instruction as to felonious assault was erroneous because it provided an
> incorrect definition of the *mens rea* element of the offense. He asserts that the
> prosecution engaged in misconduct by arguing in a manner consistent with that
> incorrect instruction. . . . He contends that his appellate counsel was ineffective
> for not having raised these errors on appeal.
>
> * * *
>
> When instructing on the abduction charge, the court told the jury that "there are
> some elements for which no mental state is required" and those elements are
> referred to as "strict liability element[s]." The trial court provided as an example
> the element that the incident occurred in Wood County. The court then explained
> the meaning of "knowingly" as defined in R.C. 2901.22(B). When the trial court
> proceeded to instruct on the felonious assault charge, it told the jury that
> "knowingly" as used in R.C. 2903.11(A)(1) is defined the same as it was in the
> instruction on the abduction charge. Myers claims that the trial court may have
> caused the jury to believe that strict liability attached to the felonious assault
> charge because the court "did not clarify whether 'knowingly' attaches to the

---

[23] Like Ground One, Myers' Grounds Two and Three allege error based on the jury
instructions as to both the lesser-included offenses of assault and unlawful restraint.
However, Myers did not raise any issues regarding the jury instructions relating to unlawful
restraint in his first 26(B) Application. (Doc. No. 25-1, Exh. 15.) Issues relating to the
unlawful restraint instruction do appear to have been raised in his Second 26(B) Application.
(Doc. No. 25-2, Exh. 28.) However, as noted previously, the state appellate court denied
Myers' second 26(B) Application as both untimely and barred by *res judicata*, and the Ohio
Supreme Court declined jurisdiction. (Doc. No. 25-2, Exhs. 29, 32.) Because the state
appellate court denied Myers' second 26(B) Application on procedural grounds, the
ineffective assistance of appellate counsel claims raised therein are themselves procedurally
defaulted and may not serve as "cause" to excuse the default of Myers' habeas claims
relating to jury instructions on the lesser-included offense of unlawful restraint. *See Edwards*,
529 U.S. at 450-451; *Wogenstahl,* 668 F.3d at 321.

nature of the harm as 'serious' or only to the causation." He contends that the jury may have concluded that the act itself must have been committed knowingly but that the defendant could be held strictly liable for the results, "whatever they may be." Myers suggests that one may legitimately defend against an assault claim by merely contending "I did not mean to hit that hard. I did not know that would happen."

We find nothing in the trial court's instructions that could have led the jury to conclude that Myers was strictly liable for causing serious physical harm to J.S. Moreover, one of the cases Myers cites – *State v. Bates*, 8th Dist. Cuyahoga No. 50816, 1986 WL 7301 (June 26, 1986)– belies his assertion that a defendant can successfully defend against a felonious assault charge merely by contending that he did not intend to bring about the extent of injury that resulted. In *Bates*, the defendant, who was initially charged with felonious assault but convicted of aggravated assault, claimed that he did not possess the required *mens rea* and argued that the trial court should have convicted him only of assault. He maintained that because he struck the victim with his fists and feet, he did not intend to cause the types of injuries that resulted. The court rejected that argument. It first recognized that a defendant's mental state will almost always be proven by circumstantial evidence. It then concluded: "The fact that appellant only used his hands and feet does not mitigate the seriousness of the physical harm nor the severity of the beatings." *Id*. at *5.

We held consistently in *State v. Walker*, 6th Dist. Sandusky No. S-97-019, 1998 WL 196278 (April 17, 1998), where the defendant admitted to simply "wrestling" with the victim, and testified that the altercation was accidental and that he did not intend to harm the victim. In that case we found no error in the trial court's refusal to instruct on reckless assault. **Because it is not reasonably probable that Myers would have succeeded had appellate counsel argued that the trial court confused the jury with its instruction on the *mens rea* element, we will not reopen his appeal on this basis. By extension, we reach the same conclusion with respect to Myers' claim that the prosecution engaged in misconduct.**

(Doc. No. 25-1, Exh. 16) (emphasis added).

As noted above, in order to determine whether a claim of ineffective assistance of appellate counsel may serve to excuse the procedural default of the underlying claim, a district court may look to the strength of the underlying claim. *See Davie*, 547 F.3d at 312; *Moore*, 708 F.3d at 778; *Manoku*, 2015 WL 4715768 at * 17. Because the state appellate court in the instant

61

case ruled on the merits, its decision is entitled to AEDPA deference.  *See Moore*, 708 F.3d at 778; § 2254(d)(1).

       To warrant habeas relief, a petitioner must demonstrate that the jury instructions were both erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *Id.  See also Mason v. Mitchell,* 320 F.3d 604, 638 (6th Cir. 2003) ("On habeas review, errors on instructions are not reviewable unless they deprive a defendant of constitutional due process."); *Weber v. Warden, Warren Correctional Inst*., 886 F. Supp.2d 749, 757 (S.D. Ohio 2012) ("The standard on habeas review is "highly demanding"—erroneous jury instructions violate "fundamental fairness" only in very narrow circumstances.") (citing *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir.2000)).  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Whalen v. Trippett*, 2000 WL 977342 at * 3 (6th Cir. July 7, 2000), citing *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).  *See also Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) ("When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'") (quoting *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).  Moreover, "[f]ederal habeas courts must also bear in mind that a single instruction is but one, small piece of a long trial containing a quantity of evidence and various instructions, and should judge an

instruction's impact in context instead of 'in artificial isolation.'"  *Whalen*, 2000 WL 977342 at *
3 (quoting *Cupp,* 414 U.S. at 146-147.)

The Court finds the state appellate court reasonably determined that, even if appellate
counsel had raised the argument that the trial court erred in incorrectly instructing the jury as to
the lesser-included offense of assault and as to the charged offense of felonious assault, that
argument would not have succeeded.  The Court has carefully reviewed the jury instructions at
issue and agrees with the state appellate court that there is "nothing in the trial court's
instructions that could have led the jury to conclude that Myers was strictly liable for causing
serious physical harm" to Ms. Smith.  *See* Doc. No. 37-3 at Tr. 49-55.  Read in context and as a
whole, the Court cannot find that the jury instructions at issue rendered Myers' trial
fundamentally unfair.  Accordingly, the Court finds the state appellate court reasonably
determined that, even if appellate counsel had raised an argument alleging trial court error in
instructing the jury, it is not reasonably probable that that argument would have succeeded.

Because the state court reasonably determined Myers' appellate counsel was not
ineffective for raising this underlying trial court error claim, the Court finds Myers has not
satisfied the cause requirement to overcome his default of Ground Two.  *See e.g., Moore,* 708
F.3d at 778; *Warren*, 2010 WL 2837001 at * 9.  Moreover, even assuming Myers could
demonstrate cause to excuse the default of Ground Two, the Court finds he has not set forth any
evidence of actual prejudice.  As noted *supra*, prejudice (for purposes of excusing a procedural
default) does not occur unless the petitioner demonstrates a "reasonable probability" the outcome
of the state court proceedings would have been different absent the alleged constitutional errors.
*See Franklin*, 434 F.3d at 417; *Mason*, 320 F.3d at 629.  Here, the state appellate properly

63

determined appellate counsel was not ineffective because it was not "reasonably probable that Myers would have succeeded" had appellate counsel raised the underlying trial court error claim set forth in Myers' first 26(B) Application.  Therefore, Myers cannot demonstrate he was prejudiced by appellate counsel's failure to raise this issue.

With regard to Myers' ineffective assistance of appellate counsel claim relating to prosecutorial misconduct, Myers argued the prosecutor engaged in misconduct by "allowing the judge to incorrectly state the law and then arguing in a manner inconsistent with that errant instruction."  (Doc. No. 25-1, Exh. 15 at PageID#299).  The state appellate court rejected this claim on the same basis as it rejected Myers' argument that the trial court improperly instructed the jury.  This Court agrees with the state appellate court and, further, agrees that Myers' appellate counsel was not ineffective for raising this underlying prosecutorial misconduct claim on direct appeal.[24]  Thus, the Court finds Myers has failed to establish either cause or prejudice to excuse the default of Ground Three on the basis of ineffective assistance of appellate counsel.

Accordingly, and for all the reasons set forth above, the Court finds Myers has failed to establish cause and prejudice to excuse the default of Grounds Two and Three.

### b.    Actual Innocence

Myers also argues, at length, that the procedural default of Grounds One, Two and Three

---

[24]  The Sixth Circuit has explained that "[p]rosecutorial misconduct can merit habeas relief only if the prosecutor's remarks render the trial so unfair as to be a denial of due process." *Moore*, 708 F.3d at 799.  *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). " '[T]he touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.' "  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)).  In order to obtain relief on a claim of prosecutorial misconduct, a petitioner "must demonstrate that the prosecution's conduct was both improper and so flagrant as to warrant reversal."  *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005).

64

should be excused on the basis of actual innocence.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

Myers' actual innocence argument is based principally on his claim that Ms. Smith was involved in three previous car accidents during which she suffered injuries to her right shoulder. Myers also relies on his assertion that Ms. Smith's cell phone records call into question her time line of events on the night in question.  This Court has already addressed these arguments at length in connection with Myers' Motion for Evidentiary Hearing, *supra*, and rejects them now for the same reasons.  In sum, the State introduced evidence that Myers repeatedly grabbed Ms. Smith by the throat, slammed her against the wall, and threw her to the floor.  Ms. Smith testified that, as a result of the assault, she suffered multiple bruises, abrasions, and a concussion.  She

65

also testified she suffered from several continuing injuries after Myers' assault, including pain and limited range of motion in her neck as well as pain and clicking in her jaw. Testimony introduced at trial indicated these injuries did not fully resolve until Ms. Smith completed her physical therapy in September 2011, over two months after the assault. Morever, with respect to her shoulder injury and surgery, testimony was introduced that (1) Ms. Smith complained of right shoulder pain several hours after the assault; (2) Ms. Smith's right shoulder injury was consistent with her description of how she was injured; and (3) her shoulder injury appeared to be traumatic as opposed to degenerative. The fact that Ms. Smith may have injured her right shoulder in a car accident that allegedly occurred eight months prior to the evening of Myers' assault is not necessary exculpatory and does not meet the high standard for demonstrating actual innocence.

Myers' actual innocence claim also fails with respect to his conviction for abduction. According to Myers, Ms. Smith's cell phone records show that she ended her call with Myers at 2:25 a.m and, therefore (and, again, following Myers' argument), she could not possibly have left his home at 2:00 am., as she testified at trial. Even assuming Ms. Smith's cell phone records demonstrate she left Myers' home prior to 2:00 a.m., this does not demonstrate Ms. Smith was free to leave Myers' home at any time. At best, Ms. Smith's cell phone records might show that she misremembered the time that she left Myers' home. The records do not, however, detract from Ms. Smith's testimony that Myers refused her repeated requests to leave and that he, in fact, physically prevented her from doing so by taking her keys, slamming the door on her arm and leg, and dragging her back in the house. Moreover, during closing argument, Myers' counsel specifically questioned Ms. Smith's time line of events, noting the apparent discrepancy

between (1) Ms. Smith's testimony that she left Myers' home at 2:00 a.m., it took her an hour and a half to get home, and she took a bath before going to the ER; and (2) Nurse Westhoven's testimony that Ms. Smith arrived at the ER at 3:40 a.m.  (Doc. No. 37-3 at Tr. 77-78.)

In light of the above, the Court finds Myers has failed to demonstrate that the procedural default of Grounds One, Two and Three should be excused on the basis of actual innocence. Accordingly, it is recommended that Grounds One, Two, and Three be DISMISSED as procedurally defaulted.

**2.      Ground Six–Sufficiency of the Evidence**

Respondent asserts Myers has procedurally defaulted his Sufficiency of the Evidence claim because it was never properly presented to the state courts.  (Doc. Nos. 25, 37.)  Myers asserts there is cause and prejudice to excuse the default.  (Doc. Nos. 30, 40.)  He also argues the procedural default of this claim should be excused on the grounds that he is actually innocent. (*Id.*)

The record reflects Myers failed to raise a sufficiency of the evidence claim on direct appeal.  (Doc. No. 25-1, Exh. 12.)  However, he did raise a manifest weight of the evidence claim on direct appeal to the state appellate court, which the Sixth Circuit has found may adequately preserve a sufficiency of the evidence claim for habeas review under certain circumstances.  *See Nash v. Eberlin*, 258 Fed. Appx. 761, 764-765 (6th Cir. 2007) ("On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction.  Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio

67

Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence.")  Here, there is some question as to whether Myers' sufficiency of the evidence claim is nonetheless unexhausted and procedurally defaulted in light of his failure to subsequently appeal to the Supreme Court of Ohio.

The Supreme Court has noted that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ( "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  Courts within this Circuit have previously relied on *Lambrix* to bypass the procedural default question, which was complicated and unnecessary to the court's determination of the case.  *See, e.g., Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir.2003); *Duyst*, 2012 WL 1736580 at * 7; *Reed v. Jenkins*, 2016 WL 6311235 at * 6 (N.D. Ohio June 22, 2016) *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016); *Burkholder v. Sheldon*, 2016 WL 3658950 at * 5 (N.D. Ohio March 14, 2016) *report and recommendation adopted by* 2016 WL 3661440 (N.D. Ohio July 1, 2016).

As Myers' sufficiency of the evidence claim can easily be decided on the merits, this Court declines to address whether it is procedurally defaulted and will proceed directly to the merits of the claim.

**C.    Merits Review**

**1.    Ground Six– Sufficiency of the Evidence**

Myers argues his conviction for felonious assault is not supported by the sufficiency of the evidence because no rational trier of fact could have found him guilty of inflicting "serious physical harm" on the victim.  (Doc. No. 40 at 16-24.)  He notes there was no evidence of a skull fracture, and asserts "Ms. Smith did not have any visible signs of injury to the head and neck region, no scratches, no bruising, no bleeding."  (*Id*. at 17.)  Myers also emphasizes Dr. Fritz's testimony that Ms. Smith's shoulder injury "could have" been caused by being thrown against a wall or floor, and that he could not "carbon date" the date of the injury.  (*Id*. at 18-19.)  He complains again that none of the medical professionals who testified at trial reviewed Ms. Smith's medical records regarding her previous car accidents.  (*Id*. at 19, 21-22.)  He then argues, again and at length, that Ms. Smith's shoulder injury was an pre-existing injury stemming from one or more of her previous car accidents.  Because this evidence was not reviewed by Dr. Fritz or Therapist Hensel, Myers argues "the testimonies of the medical professionals failed to comply with the rules of evidence, as the testimonies 'were not' based on reliable scientific, technical, or other specialized information."  (*Id*. at 22.)

As noted above, Myers did not raise a sufficiency of the evidence claim on direct appeal. He did, however, argue that the verdict was against the manifest weight of the evidence.[25] Earlier in the decision, the state appellate court summarized the evidence regarding Ms. Smith's

---

[25] As noted previously, the Sixth Circuit has held that "the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Nash,* 258 Fed. Appx. at 765.  Thus, this Court will consider the state appellate court's findings regarding Myers' manifest weight of the evidence claim when considering this Ground for Relief.

69

injuries as follows:

> {18} For example, the state presented photographs taken at Marion General Hospital which depicted J.S.'s injuries.  It also presented her medical records and testimony from a number of witnesses, including the nurse who treated her immediately following the incident and the deputy who took J.S.'s report later that morning.  The nurse testified to the nature and extent of J.S.'s injuries, many of which she believed to have been recently inflicted, and she described J.S. as 'emotionally upset' and uncomfortable.  She recounted what J.S. had told her during the examination as to how she sustained the injuries, and that account was consistent with J.S.'s testimony at trial. The sheriff's deputy also testified to the presence and freshness of J.S.'s injuries, J.S.'s demeanor, her investigation of the incident, and her decision to press forward with the charges against Myers.  Also, because some of J.S.'s injuries required continuing treatment, the state also presented testimony from J.S.'s orthopedic surgeon, who testified that J.S. suffered a labral tear to her shoulder which he concluded had been caused by traumatic injury and which required surgery.  J.S.'s physical therapist, whom she began seeing within a few weeks of the incident, also testified and described J.S.'s injuries and her ongoing pain.

> {19} The testimony of these witnesses, the photographs, and the medical records, coupled with J.S.'s detailed account of what happened that night, provided strong evidence against Myers. . . .

*State v. Myers*, 2014 WL 4269104 at * 4.

The state appellate then considered and rejected Myers' manifest weight of the evidence argument, as follows:

> {¶ 23} Myers contends that there was no evidence to support J.S.'s claim that she was assaulted and abducted.  He claims that the photographs admitted at trial reveal no abrasions to J.S.'s face despite her claim that Myers slammed her face-first into the wall multiple times.  He also claims that the testimony of his former neighbors, Christie Kapelka and Nikki Lafferty, undermined J.S.'s credibility.

> {¶ 24} With respect to his neighbors' testimony, Kapelka, who lived three houses from Myers, testified that she drove by Myers' home around 8:30 p.m. that evening and observed J.S. and Myers enjoying themselves outside.  She claimed that she heard no yelling or screaming coming from Myers' home that night.  Lafferty, also a neighbor of Myers, testified that the blinds at Myers' house were open that night and she could see J.S.  She denied that J.S. appeared to be in any distress, or that she had heard any screaming that night.  Lafferty also indicated

70

that she had taken care of Myers' dog in the past and that the dog often barks around strangers or when something unusual has occurred.  She testified that she heard no barking, but conceded that J.S. would not have been a stranger to the dog.

{¶ 25} With respect to the absence in the photographs of visible injuries to J.S.'s face, defense counsel did not specifically inquire of the witnesses whether they observed redness on J.S.'s face.  He did, however, ask the nurse and the sheriff's deputy a number of questions about whether there appeared redness around J.S.'s neck given her claim that Myers had grabbed her by the throat.  Briefly summarizing, the witnesses essentially testified that sometimes red marks appear and sometimes they do not.

{¶ 26} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L–10–1162, 2012–Ohio–616, ¶ 14.  Here, the jurors saw the pictures and heard the witnesses' testimony and were free to draw their own conclusions about J.S.'s credibility based on the totality of the evidence. According to its verdict, the jury apparently found J.S.'s account of the incident to be credible and was not persuaded that the incident did not occur merely because the photos did not demonstrate injuries to her face or because Kapelka and Lafferty heard no screams or barking coming from Myers' home.  We will not disturb the jury's findings.

{¶ 27} Because Myers has not established that the state failed in its burden of persuasion or that the jury clearly lost its way, we find his second assignment of error not well-taken.

*State v. Myers*, 2014 WL 4269104 at * 5-6.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000). The role of the reviewing court in considering such a claim is limited:

A reviewing court does not reweigh the evidence or redetermine the credibility of

the witnesses whose demeanor has been observed by the trial court.  It is the
province of the factfinder to weigh the probative value of the evidence and
resolve any conflicts in testimony. An assessment of the credibility of witnesses is
generally beyond the scope of federal habeas review of sufficiency of evidence
claims. The mere existence of sufficient evidence to convict therefore
defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).

Moreover, it is well established that '"attacks on witness credibility are simply challenges to the

quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v.*

*Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935

(6th Cir.1984)).

Consistent with these principles, the Supreme Court has emphasized that habeas courts

must review sufficiency of the evidence claims with "double deference:"

We have made clear that *Jackson* claims face a high bar in federal habeas
proceedings because they are subject to two layers of judicial deference.  First, on
direct appeal, 'it is the responsibility of the jury—not the court—to decide what
conclusions should be drawn from evidence admitted at trial.  A reviewing court
may set aside the jury's verdict on the ground of insufficient evidence only if no
rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S.
1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on
habeas review, 'a federal court may not overturn a state court decision rejecting a
sufficiency of the evidence challenge simply because the federal court disagrees
with the state court. The federal court instead may do so only if the state court
decision was 'objectively unreasonable.' " *Ibid*. (quoting *Renico v. Lett*,
559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this

standard, "we cannot rely simply upon our own personal conceptions of what evidentiary

showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire

whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with

which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas

court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles*, 129 S.Ct. at 1420.

Upon careful review of the trial transcript, the Court finds Myers' felonious assault conviction is supported by substantial evidence.[26] The state appellate court accurately summarized the trial testimony and evidence of record. As noted by the state court, the State introduced a great deal of evidence regarding the nature and extent of Ms. Smith's injuries. Ms. Smith testified Myers repeatedly grabbed her by the throat, slammed her against the wall, and threw her to the floor, as a result of which she suffered multiple bruises, abrasions, and a concussion. (Doc. No. 37-1 at Tr. 60-64, 67, 74-79.) She also testified she suffered from several continuing injuries after Myers' assault, including pain and limited range of motion in her neck as well as pain and clicking in her jaw. (*Id.* at Tr. 82-84.) Emergency room nurse Carly Westhoven corroborated Ms. Smith's testimony. Nurse Westhoven testified Ms. Smith presented to the ER with multiple bruises and abrasions, reported she had been "beaten up by her boyfriend," and was "very upset and appeared very uncomfortable." (*Id.* at Tr. 146-147.) Nurse Westhoven authenticated photographs taken at the hospital which showed bruises on Ms. Smith's left upper chest, left upper arm, left elbow, right upper arm, right elbow, right forearm and wrist, right shin, and left inner thigh. (*Id.* at Tr. 155-158.) She also testified Ms. Smith

---

[26] The Court applies AEDPA deference to the state appellate court's manifest weight discussion as construed to encompass a sufficiency of the evidence analysis as suggested by *Nash, supra*. However, the Court notes that, even if it were to conduct a *de novo* review of this claim, it would reject Myers' sufficiency of the evidence claim for the reasons set forth above.

complained of pain in her right shoulder, neck, and back.  (*Id*. at Tr. 168-169.)

Ms. Smith's testimony was further corroborated by the testimony of Officer Baker.

Officer Baker testified she observed bruising on both of Ms. Smith's arms, a contusion on the

upper left just below the collarbone, and scrapes on her forearms.  (Doc. No. 37-2 at Tr. 94.)

Officer Baker took photographs of these injuries, which were introduced and admitted as

Exhibits at trial.  (*Id*. at Tr. 94-97.)  Officer Baker admitted she did not observe any redness on

Ms. Smith's neck, but stated red marks as a result of being grabbed on the neck are "rarely

visible" by the time the police get there.  (*Id*. at Tr. 94, 96.)

Physical therapist Elizabeth Hensel also testified extensively regarding Ms. Smith's neck

pain, jaw pain, and right shoulder pain in the weeks and months following the assault.  (Doc. No.

37-1 at Tr. 179-181.)  Therapist Hensel testified Ms. Smith's injuries were consistent with Ms.

Smith's explanation of how she was injured.  (*Id*. at Tr. 188.)  She also testified it took several

weeks to resolve Ms. Smith's neck and jaw pain, and that Ms. Smith's shoulder pain persisted

despite physical therapy.  (*Id*. at Tr. 182-183.)  Dr. Fritz testified Ms. Smith's right shoulder

injury appeared to be traumatic as opposed to degenerative, and could be consistent with falling,

being thrown to the ground, or hitting a wall with force.  (Doc. No. 37-2 at Tr. 113-114, 122-

123, 125.)

While Myers questions the credibility of this testimony (particularly the testimony of Ms.

Smith), the state appellate court was not unreasonable in determining that, taken as a whole, the

evidence was sufficient to support a finding that Myers committed felonious assault by inflicting

"serious physical harm" on Ms. Smith.  Moreover, Myers' reliance on Ms. Smith's alleged

previous car accidents and shoulder injuries is misplaced.  As noted *supra*, it is well-established

that a "sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.'"

and  "does not extend to non-record evidence, including newly discovered evidence."  *Herrera*,

506 U.S. at 402 (1993)(citing *Jackson*, 443 U.S. at 318).  *See also Brown*, 567 F.3d at 204-205

(stating where a petitioner challenges the sufficiency of the evidence, courts must determine

whether "viewing *the trial testimony and exhibits* in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt") (emphasis added); *Group,* 158 F. Supp.3d at 665 (habeas review of

sufficiency of the evidence claims is "limited to the evidence adduced during trial").  Here, it is

uncontested that Ms. Smith's medical records were not admitted as exhibits at trial or otherwise

presented to the jury.  Under the authority noted above, any evidence not presented to the jury is

not part of the sufficiency of the evidence analysis on habeas review.  Thus, Myers cannot rely

on alleged non-record evidence regarding Ms. Smith's previous shoulder injury to establish that

his felonious assault conviction was not supported by the sufficiency of the evidence.

Accordingly, and for all the reasons set forth above, it is recommended that Myers'

sufficiency of the evidence be DENIED.

### 2.    Myers' Attempts to Raise Additional Habeas Claims

Finally, the Court rejects Myers' repeated attempts to raise additional habeas claims in

his Traverse and various motions.  Specifically, Myers purports to raise and argue various

alleged instances of ineffective assistance of appellate counsel, including claims based on

appellate counsel's failure to raise on direct appeal (1) the failure of Dr. Fritz to review the past

medical records of Ms. Smith; (2) prosecutorial misconduct based on the allegedly false

testimony of Ms. Smith regarding her previous car accidents; and (3) ineffective assistance of

trial counsel claims based on trial counsel's failure to present the defense of pre-existing injury, object to improper remarks by the prosecutor during closing, and question Ms. Smith regarding her time line of the events of July 15, 2011.  (Doc. No. 30 at 5.)  Myers also attempts to raise numerous additional ineffective assistance of trial counsel claims, including the following: (1) failure to object to the State's alleged use of false testimony by Ms. Smith; (2) failure to raise and introduce evidence regarding Ms. Smith's alleged pre-existing shoulder injury; (3) failure to object to the testimony of Dr. Fritz on the grounds he failed to review Ms. Smith's past medical records; (4) failure to review and introduce as evidence Ms. Smith's cell phone records; (5) failure to review and introduce testimony regarding Myers' work history and schedule; and (6) failure to raise the issue of Myers' alleged unlawful detainment after his bond was revoked.  (*Id.* at 7-21.)

In addition, Myers attempts to raise an additional prosecutorial misconduct claim based on the State's (1) alleged knowing use of false testimony by Ms. Smith; and (2) improper remarks during closing argument.  (*Id.* at 21-24.) Finally, Myers attempts to raise an additional habeas claim based on the trial court's decision to allow the testimony of Katherine Mull, the State's expert witness regarding Battered Wife's Syndrome.  (*Id.* at 26.)

None of the above claims are raised in the Petition.  Nor has Myers properly moved to amend his Petition to raise them.  Because these claims are asserted for the first time in his Traverse, they are not properly before this Court and will not be addressed herein.  *See, e.g., Tyler*, 416 F.3d at 504 (holding that because the petitioner's claim was presented in his traverse rather than in his petition, the district court did not err in declining to address it); *Palmer*, 2005 WL 3965400 at * 8 ("A traverse, however, is not the proper vehicle in which to raise new claims

or sub-claims in habeas corpus."); *Burns*, 2007 WL 2318740 at *5, n. 2 ("Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court.").

## V. Conclusion

For all the reasons set forth above, the following motions are DENIED:  (1) Motion for Evidentiary Hearing (Doc. No. 31); (2) Motion for *In Camera* Examination of Medical Documents (Doc. No. 32); (3) Motion to Supplement the Record (Doc. No. 33); (4) Motion for Leave to Address Recently Obtained Information (Doc. No. 34); (5) Motion for Leave to Expand the Record with subpoenaed cell phone records (Doc. No. 42); (6) Motion for Leave to Expand the Record with request for written finding (Doc. No. 43); (7) Motion for Leave to Expand the Record with "any and all Defendant Exhibits A through K that were filed to the record on February 13, 2012;" (Doc. No. 44); and (8) Motion for Leave to Further Address October 11, 2012 Bond Revocation (Doc. No. 45).

In addition, it is recommended the Petition be DISMISSED.


Date:   May 8, 2017                                   *s/ Jonathan Greenberg*
                                                      Jonathan D. Greenberg
                                                      United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**